## NORTHROP *against* CURTIS and others.

Where the act incorporating a turnpike company, provided, that the shares of stock should be transferrable only on the books of the company, in such manner as the company should, by their by-laws, direct; and a by-law of the company provided, that the board of directors should prescribe the form of transfer, to be registered, by the clerk, on the books of the company, and that no trans-

fer should be valid, unless so made and registered ; it was held, that a written assignment of stock, made *in pais*, in the form prescribed by such by-law, and seasonably registered at length by the clerk, on the books of the company, was *a transfer on the books of the company*, within the meaning of the charter, and conveyed the legal title.

This was a bill in chancery, praying that the legal title of certain shares of the stock of *The Bridgeport and Newtown Turnpike Company*, to which the plaintiff claimed to be entitled in equity, might be transferred to him.

The cause was heard at *Fairfield, December* term, 1823, before *Peters*, J.

In *October*, 1801, *John S. Cannon* and others were incorporated, by the name of *The Bridgeport and Newtown Turnpike Company*, with power to ordain such by-laws and ordinances as should be necessary for the government of the company. It was also provided, by the act of incorporation, that "all rights and shares in said turnpike, and all property that should be vested therein, or appurtenant thereto, and belonging to said company, should be considered and be personal estate; and that the shares of said company should be transferrable only on the books of said company, and in such manner as said company should, by their by-laws, direct. The company, thus constituted, was soon afterwards organized ; its shares were taken up, by subscription; the road was made; gates were erected; and toll was collected. The following by-law of the company was then made: "The board of directors shall prescribe the form of transfer, to be registered by the clerk, on the books of said company; and the shares, being 500, shall be assignable and transferrable; but no assignment or transfer shall be valid, unless made in the form prescribed by the directors, and registered as aforesaid, by the clerk." Before any transfer of the shares, *viz.* on the 4th of *February*, 1803, the directors prescribed the following form of transfer: "I, *D. B.* of *N.* in the county of *F.*, do, by these presents, assign, make over and transfer to *G. H.* of *W.*       full original shares in the capital stock of *The Bridgeport and Newtown Turnpike Company*, with all the privileges, and subject to all the burdens thereunto appertaining; value received of him, the said *G. H.* Witness my hand, at *N.*, this       day of       1803."

On the 27th of *December*, 1814, *Beebe Hine* held two shares of the stock, for which he was an original subscriber, and was the assignee of one hundred sixty and an half shares, under bills of sale from sundry persons, made *in pais*, in the form prescrib-

ed by the by-law, and afterwards registered on the books of the company. The plaintiff claimed, that on the day last mentioned, *Hine*, in payment of debts due from him to them respectively, assigned to *Ezra Graves* and *Jedediah Graves* sixty two and an half shares, and to the plaintiff one hundred shares, by bill of sale, in the form prescribed by the by-law; and that afterwards, *viz.* on the 28th of *December*, 1814, such assignments were registered at full length, on the books of the company, by the clerk. The plaintiff has since acquired the title of *E.* and *J. Graves*.

The defendants claimed, and introduced evidence to prove, that after the bills of sale had been executed by *Hine*, they were delivered by him to one *Masters*, to be carried to *Newtown* to be registered; and that *Masters* then had in his hands five writs of attachment, in favour of *William H. Taylor*, *William Taylor*, *Clarke Blackney*, *Uraniah Everitt* and *Noadiah Mygatt*, respectively, against *Hine*; and it was agreed by *Hine*, that these writs should be carried with the bills of sale to the clerk's office in *Newtown*, and should be served first on *Hine's* stock, and that the bills of sale should then be delivered to the clerk to be registered; and that accordingly, the writs were served, and the bills of sale delivered, in that order. The defendants also claimed, that *Sylvanus Noble* attached the stock of *Hine*, on the same day, before the bills of sale were received for record; and that after the service of the other attachments, and after the receipt of the bills of sale by the clerk, but before they were recorded at length, *viz.* at 2 o'clock in the morning of the 28th of *December*, *James Nichols* attached the same stock; and that all these attachments were regularly proceeded with, judgments recovered, and executions issued thereon levied on the stock in question, the whole of which was sold according to law. And the defendants offered in evidence such attachments, judgments, executions and sales thereon, to shew, that the plaintiff had no title to any part of the stock.

The plaintiff admitted, that the two shares, for which *Hine* was an original subscriber, might legally be taken, by attachment and execution; but objected to the evidence offered by the defendants for the purpose of disproving the plaintiff's title to any of the other shares claimed by him, on the ground that *Hine* had no title at law to them. The defendants insisted, that the transfers to *Hine*, having been made and registered on the books of the company, in pursuance of the by-law, and in the form prescribed by the directors, were made on the books of the

company pursuant to the charter; so that *Hine* thereby had a legal title to all the shares; and that, as all the attachments were made before the transfers from *Hine* to *E.* and *J. Graves*, and to the plaintiff, were recorded at full length on the books of the company, they had priority thereto, and took all the shares, so that the plaintiff acquired no title whatsoever, in law or equity, to any part of the stock in question.

The court, being of this opinion, admitted the evidence offered by the defendants, and thereupon decreed, that the plaintiff should take nothing by his bill.

The plaintiff moved for a new hearing; and the questions arising thereon were reserved for the advice of all the Judges.

*Sherman* and *Bissell*, in support of the motion, contended, That the plaintiff was entitled to a new trial, 1. Because the judge relied on a decision of this Court, which was never made as reported, *viz.* that the *registry* of the transfer on the books of the company, was *an assignment on the books of the company.* *Northrop* v. *The Newtown and Bridgeport Turnpike Company,* 3 *Conn. Rep.* 544. In proof of this remark, an appeal was made to the recollection of the assistant judges.

2. Because the doctrine itself was not sound; being built on the construction of a prescribed form; when, in the first place, no form has ever been prescribed, inasmuch as the *charter* requires it to be done, by a *by-law*, and the by-law does not do it, but pretends to authorize the *directors* to do it,—which cannot be. Secondly, the form prescribed by the directors, does not admit the construction given it, and is not a transfer on the books, but only the registry on the books of a *void* transfer *in pais*. *The Union Bank of Georgetown* v. *Laird,* 2 *Wheat.* 390. *The Marlborough Manufacturing Company* v. *Smith,* 2 *Conn. Rep.* 579.

3. If this be so, a transfer in the form mentioned, is a mere *agreement to convey,* and not *a conveyance*. Equity may enforce this agreement, and compel a conveyance. Until this is done, no *title* passes, at law, or in equity. *Hine* had no title; but there was an agreement to convey to him. Consequently, he had nothing, which could be *attached.* The attachments of these shares, then, were void; and they ought not to have been received.

*Daggett* and *Smith*, contra, contended, 1. That according to the decision of this Court, in *Northrop* v. *The Newtown and*

*Bridgeport Turnpike Company, Hine's* title to the stock, at the time of the attachments, was good ; and that all the stock was secured, by the attachments, before the plaintiff had gained any right.

2. That if the case referred to has not been correctly reported ; and, in this view, it should appear, that *Hine's* title to the stock was defective, so that neither the plaintiff nor the defendants gained any legal title to the stock ; then it would follow, that the plaintiff and the defendants gained an equitable right to the stock ; but the defendants' equity commenced upon the attachments, which was prior to the commencement of the plaintiff's equity. This being established, the plaintiff would not be entitled to relief ; for, in the first place, if the equity, is equal, the condition of the defendants is the best. Secondly, the defendants having equal equity, and having gained the legal title, cannot be disturbed.

Hosmer, Ch. J. The bill of the plaintiff proceeds on the ground, that *Hine* had an equitable interest, but no legal title ; and that, for this reason, the turnpike stock in question was not attachable   The opinion I have formed on the matter before the court, renders it unnecessary to determine, whether a right merely equitable, may, or may not be attached.   This question I shall, therefore, waive, and confine my opinion to the sole enquiry, whether, when the above stock was attached, *Hine* had the legal title.

The objection advanced against the title, is, that the tranfers of the stock were not made *on the books of the company*. That the stock was duly transferred to *Hine*, and that he was invested with the legal title, if a deed was made of it *in pais*, and registered on the books, according to the company's by-law, and the invariable practice, is denied.   Nothing short of an actual assignment on the books, signed by the proprietor of the stock, it is contended, is sufficient to convey the legal title.

The case of *Northrop* v *The Newtown and Bridgeport Turnpike Company*, 3 *Conn. Rep.* 544. settles the point in question. In that case, it was decided, that the registration of a deed of assignment, to commence its legal operation after it is recorded, is virtually the same, as if the assignment were actually made on the books of the company.   The decision was, in no sense, *obiter*, but was direct upon the point in question.   It is now attempted, not on the basis of *memoranda*, or clear mistake, but of the mere deficiency of recollection in some of the

judges, whether the matter in question, was, or was not determined, in the case just cited, to draw the subject again into consideration. The effort is too feebly supported, to shake the solemn report of a case, by an authorized reporter, unless the zeal and feelings of a party are permitted to outweigh the interest of the community. This remark I am induced to make, from no personal objection against the re-examination of the point once determined, but from a deep conviction, that the public are highly interested in a steady adherence to decisions solemnly made ; and what is ultimately connected with this observation, in a due regard to the best evidence existing relative to such decisions.

Before I again attempt a construction of the charter and by-law of the company, on which the controversy depends, I will put out of consideration some remarks made in the argument, that the matter in question being simplified, its merits may more distinctly appear. It has been said, that the by-law was made by the directors, the company only having been authorized to do this act; and that it is void, because the company could not thus act by delegation. Waiving the argument on this subject, it is clear, that the facts have been misconceived. The charter prescribes, that "the shares in said company shall be transferrable only on the books of said company, and in such manner as said company shall, by their by-laws, direct." A by-law was made, by the company, in conformity with the charter, that the board of directors should prescribe the form of transfer, to be registered, by the clerk, on the books of the company ; and that no assignment should be valid, unless made in the form prescribed by the directors, and registered as aforesaid, by the clerk. This by-law is in strict compliance with the charter, and goes beyond it only, by subjecting the stockholder to the use of a prescribed form. This unnecessary prescription cannot invalidate the by-law in its essential particulars ; and if a needless form has been adhered to, in a case, in which no form was legally prescribed, it constitutes no objection.

The assertion, frequently repeated, that the transfers to *Hine*, were *in pais*, and not on the books, is, until established by argument, of no avail, and amounts merely to a *petitio principii*. It, however, has been said, that the by-law intended the transfer to be *in pais*, and *before* registration ; and that it was to be a valid transfer, *afterwards* registered on the books. The direct opposite of this is the fact. The by-law declares, that

" no transfer or assignment *shall be valid*," unless it is registered; thus suspending *the validity* of the act on the registration.

It has been insisted, that determinations have been made on the subject in question, precisely analogous to the present case; and in support of this position two decisions have been cited. One of them is that of *The Union Bank of Georgetown* v. *Laird,* 2 *Wheat.* 390. By the rules of the bank, an assignment of stock was required *to be made on the books.* The bank would not permit the assignment thus to be made, the assignor being indebted, and the stock pledged to the bank, by the by-laws, for the debt. There was an assignment *in pais,* and such assignment was not considered valid; the rules of the bank having required, that the assignment should be *made on the books* only. The case, then, exclusively determines this principle; that a transfer required to be *made on the books,* without any thing further to explain or qualify this expression, can be made in no other manner. The diversity between this case and the one in hearing, is too obvious to require illustration.

The only remaining case that was cited, was *The Marlborough Manufacturing Company* v. *Smith,* 2 *Conn Rep.* 579. By the charter of the company, the shares of stock were made transferrable only on their books, in such form as the directors should prescribe. A by-law was duly established, which required, " that all transfers of stock should be made by assignment on the treasurer's book, either in person, or by authorised attorney, *on surrender of the certificate granted for the stock, and a new certificate being granted by the treasurer.*" No assignment was made on the book; no certificates of ownership were surrendered, or new ones received; and nothing was done, but the giving of a credit of the amount of the share, on the treasurer's book, to the successive holders. The court was of opinion, that the stock had not been legally transferred. " Though the form of assignment is not pointed out," said Ch. J. *Swift,* " yet the by-law, on its fair construction, requires, that there must be a written assignment on the treasurer's book, subscribed by the assignor, or his authorised attorney, to constitute a transfer of the stock." I do not see how any other construction could have been given. The requisition, without any addition or qualification, that the transfer should be made on the treasurer's book, in its literal import, was confirmed, by the expression " either in person, or by authorized attorney," which did all but designate the precise mode in which the transfer

*Fairfield,*
June,
1824.

Northrop
*v.*
Curtis.

was to be effected. Besides, perfect silence relative to any act *in pais*, or registration, evinces a marked discrimination between the above case, and the principal one under discussion. The former case decided, *that the transfer was not pursuant to the by-law*; but in the case before us, it is to be determined, as the transfer is conformable to the by-law, whether this constitutes a legal assignment.

By the words of the charter, "the shares in said company shall be transferrable only *on the books of the company*, and *in such manner*, as said company shall, by their by-laws, direct.

The former part of the clause, that the transfer shall be " *on the books,*" as well from the popular meaning of the language, as from the practical construction, intends, that the assignment literally shall be made and perfected " on the books ;" and the phrase is susceptible of no other meaning. But if it was the intention of the legislature to limit the company to this mode of transfer, it is difficult to assign a reason for the addition of other words. The phrase was complete, and the signification obvious. Should it be asserted, that the legislature intended to give the company authority to prescribe *the form* of transfer, by the residue of the expression, I cannot admit the affirmation. It is not the meaning of the expression, that the transfer shall be " *in such form*" as the company may direct ; at least, the expression, by reducing manner to form, is much abridged. By the word *form*, is meant the mode, or external appearance, of a thing ; but the word *manner*, though it perhaps includes the form, is much more comprehensive. It is synonimous with *method*, or *peculiar way* ; and hence he, who is authorized to prescribe *the manner*, has authority to direct *the peculiar way*, in which any thing is to be done. To illustrate : If the directors of a bank are invested with the power of prescribing the *form*, in which the bills of the bank are to be issued ; this authorizes them to direct the phraseology of such bills, and how they shall be signed. But if they are clothed with authority to prescribe the *manner*, although it includes the former, it plainly comprehends much more. When the legislature, after enacting, that the transfer shall be on the books of the company, immediately subjoin, in *such manner* as the company shall direct, it is no stretch of construction, to say, that the mode in which such transfers should be put upon the books, was left to their discretion.

It cannot be denied, that in this, as well as in other cases, the proper construction of a statute, is that, which answers the ob-

Northrop
*v.*
Curtis.

ject of the legislature; for *qui hæret in litera, hæret in cortice.* So far as related to the interest or convenience of the company, no limitation would probably be put upon it; but it would be permitted to pursue its own discretion. It undoubtedly was the legislative object, to protect the community in their purchases of stock, by rendering the books reasonable evidence of ownership. This is equally accomplished, whether the books are absolute evidence of title, or strongly presumptive evidence, from the registration of the transfers. If this is admitted, it was *no sine qua non,* on the part of the legislature, to require, that the transfers should, literally, be on the books; and that an assignment registered, should be insufficient to convey the title. The community have the same notice, in the case of transfers registered, as they have of deeds of lands recorded; and allowing mankind to transact their business in a manner the most convenient to themselves, reasonable security is given to every person of ordinary vigilance, by the notice, which a recorded deed, or registered transfer, always communicates.

The supposed inconveniences resulting from a construction, giving validity to the by-law of the company, are two. It is said, the transfer may be fraudulent, and that two transfers may be exhibited for registry of the same stock, at the same time. Let us admit, then, for the sake of argument, that the transfer must be literally made on the books, by the owner of the stock, or by his attorney. Will this preclude the before-mentioned possibilities? The power of attorney may be fraudulently obtained; and this I setoff against the first possible mischief: and two powers of attorney may be exhibited, at the same time, for the transfer to different persons of the same stock; and this countervails the last. It is impossible, without putting too great restraint on business, to require absolute security from practicable fraud. All that the intercourse of mankind, without being cramped through excessive fear of evil, admits of, is *reasonable protection,* on *reasonable precaution.* The construction of laws, under the influence of subtle discrimination, and morbid apprehension, would be productive of innumerable evils. Hence it is, that distant contingencies, or *potentia remotissima,* are not numbered among those consequences, by which construction is to be given to a legislative act. It is a maxim, that laws are adapted to those things, which most frequently happen; and so must the construction of them. As long as fact is more convincing than speculation, the mind will be more influenced, by twenty years experience under the by-

law in question, during which it is not pretended, that any of the fancied inconveniences have happened, than by the most glowing anticipation of evil.

The *Newtown and Bridgeport Turnpike Company*, soon after the reception of their charter, by their by-law, expressed their sense of its meaning; and the transfers of stock have uniformly been made in the manner prescribed, for nearly twenty years. The court is now called upon, to adopt a principle, which will set the company afloat, and annul every transfer, that has been made during all the aforesaid period. Hundreds, perhaps thousands, of assignments for valuable considerations, supposed to be valid and long confided in, it is requested may be considered as nullities; and a scene of injustice and litigation be opened, to which no bounds can be assigned. To justify a construction, involving such wide-spread mischief, the legal propriety of it should be palpable. If it is doubtful, the usage ought to fix the exposition, as it is a strong proof of the legislative intent. It was cotemporaneous with the charter; many years it has existed, uniformly, and without question; and hence it falls within the antient principle, *optimus interpres rerum usus.*

BRAINARD, J. was of the same opinion.

PETERS and BRISTOL, Js. dissented.

New trial not to be granted.