ZADOK A. TAFT *vs.* OTIS ADAMS.

The legislature have the power to shorten the term of office of any officer, the tenure of
whose office is not fixed by the constitution.

The provision of *St.* 1854, *c.* 77, § 3, that in November annually "there shall be one county
commissioner chosen in the manner prescribed in Rev. Sts. *c.* 14, except so far as such
manner is changed by this act," refers not only to the mode of casting the votes, but
to the means of ascertaining the result, and requires the examiners to count the votes on
the eighth day after the election.

PETITION under *St.* 1852, *c.* 312, § 42, presented on the 12th
of February 1855, for leave to file an information in the nature
of a *quo warranto.* The petition set forth that by *St.* 1854, *c.*
77, passed on the 11th of March last, the county commissioners
for the county of Worcester were divided into three classes, the
commissioner of the first class to hold office until the day of the
then next annual election of governor and until a successor
should be chosen and qualified in his stead, and no longer; that
on the 12th of May the said county commissioners determined
by lot to which class each member of their board should belong,
and that the respondent, then one of said board, belonged to
said first class; that on the 13th of November last, being the
day of the next annual election of governor after said determi-
nation, in each town in said county votes were duly given,
declared, recorded, and copies thereof transmitted to the clerk of
the court of common pleas, and by him transmitted to the board
of examiners duly appointed by virtue of the Rev. Sts. *c.* 14,
namely, the judge of probate, the register of probate, and the
said clerk; that said examiners upon the 21st of November, and

Taft *v.* Adams.

within eight days after said election, examined said returns, and ascertained that the petitioner had a large majority of said votes, and gave him written notice of his election as county commissioner; that the petitioner accepted the said election, and had ever since been ready and desirous to enter upon the performance of the functions and duties of the office, yet the respondent, though knowing all these facts, had excluded the petitioner from said office, and refused to allow him to perform the functions and duties thereof. And the petitioner prayed that due process of law might be awarded against the respondent to answer to the Commonwealth and the petitioner by what warrant he claims to have, use and exercise the office and functions of county commissioner; and for an injunction, and for further relief.

The respondent filed an answer, on the 13th of February 1855, admitting the facts alleged in the petition, and concluding thus: " Inasmuch as he did not find in said act of the 11th of March last concerning county commissioners, or in any other statute of this commonwealth, any authority conferred upon said examiners to perform that service, or any provision whatever for the counting of said votes and the authentication of the result of said election; and inasmuch as said act is otherwise defective, uncertain and insufficient in its provisions; and inasmuch as this respondent was elected to that office for the term of three years, which term had not then and has not yet expired, he has not felt himself at liberty to surrender his said office, or to cease from the discharge of its duties, without an adjudication upon the validity and sufficiency of said act by a competent judicial tribunal. And this respondent, desirous of a speedy adjudication herein, and traversing the right of the petitioner to said office to which he claims to be entitled, most respectfully submits his own rights and duties in the premises to the judgment and decision of this honorable court."

*E. Washburn & L. C. Boynton,* for the petitioner. By the Rev. Sts. *c.* 14, §§ 17, 24, county commissioners were chosen for the term of three years. But the statute of March 11th 1854 divided the county commissioners then in office into three

c.asses, to be ascertained by the commissioners by lot, within sixty days, and those of the first class to hold until the day of the annual election of governor (the second Monday in November) 1854, and until successors should be chosen and qualified in their stead, and no longer, the second class until the annual election in 1855, and the third class until the annual election in 1856 ; and provided for the election of one commissioner at each annual election of governor ; and repealed all inconsistent acts. *St.* 1854, *c.* 77, §§ 1, 2, 3, 8. Thus this statute, and the determination by lot that the respondent belonged to the first class, created a vacancy in his office. The legislature have the power to shorten the term of office of persons holding offices the tenure of which is not fixed by the constitution. Const. of Mass. *c.* 1, § 1, art. 4. *Butler* v. *Pennsylvania*, 10 How. 402. *Wales* v. *Belcher*, 3 Pick. 508. *Commonwealth* v. *Bird*, 12 Mass. 443. And frequent instances of the exercise of this authority are to be found in the statutes of the Commonwealth, establishing, changing the jurisdiction of, and abolishing, courts of sessions, courts of common pleas, commissioners of highways, and county commissioners, even where the terms fixed by the statute creating the offices have not expired. *Sts.* 1782, *c.* 14 ; 1786, *cc.* 67, 68 ; 1803, *c.* 154 ; 1807, *c.* 11 ; 1809, *c.* 18 ; 1811, *cc.* 33, 81 ; 1813, *cc.* 173, 197 ; 1818, *c.* 120 ; 1820, *c.* 79 ; 1825, *c.* 171 ; 1827, *c.* 77 ; 1835, *c.* 152. And to avoid such an effect, it was expressly provided in Rev. Sts. *c.* 14, § 15, that the county commissioners, then in office, should continue to hold their offices according to the provisions of the laws under which they had been elected.

The petitioner was duly chosen to fill the vacancy, and is entitled to the office. The *St.* of 1854, *c.* 77, § 3, provided that he should be " chosen in the manner prescribed by the fourteenth chapter of the revised statutes, except so far as such manner is changed by this act." The " manner " of election includes every thing necessary to entitle the person elected to the office. And the evident intention of the legislature, looking at the substance, and not merely at the strict letter of the statute was, not that the votes should be counted on any particular day, but that they should be counted on the eighth day after the election. See Rev. Sts. *c.* 14, §§ 18, 20, 22.

*C. Allen & P. C. Bacon,* for the respondent. The *St.* of 1854, without making any change in the functions or duties of the office, undertakes to legislate men out of office, to which they were chosen by the will of the people for a fixed term, not yet expired. This is so extraordinary, if not unprecedented, an exercise of power, that it should be regarded with the strictest scrutiny, and not receive any aid from the courts to carry into effect what the legislature have left incomplete.

This act is defective and void, because it does not provide for any board of examiners, or fix any day on which the votes shall be counted. It only provides that the commissioner shall be chosen in the manner prescribed in the Rev. Sts. *c.* 14, but does not provide any means of ascertaining the result of the election. But if "manner" of election does include the counting of the votes, then, by the Rev. Sts. *c.* 14, § 18, they are to be counted on a day specified, namely, on "the first Tuesday succeeding the second Monday of April in each year." The provision of § 20, for examining within eight days after election, applies only to the case of an election to fill a vacancy. It would be absurd to suppose that the legislature intended that votes cast in November should not be counted till April. But they have certainly failed to express any other meaning.

The decision was made on the 19th of February.

SHAW, C. J. This is understood to be an amicable proceeding, to try a question of great practical importance, upon which controversies have arisen in several counties, respecting the validity and construction of a statute passed last year, changing the times of election of county commissioners, and the tenure of the commissioners then in office. This is a class of officers, having the pecuniary concerns of counties, and the general administration of county affairs, under their jurisdiction; it is important, therefore, as well to their own security and satisfaction, as to all others whose rights are affected by their acts, to ascertain, whenever a doubt is suggested on the subject, whether they are legally chosen and entitled to the offices which they actually exercise or claim to hold, and are legally clothed with the powers which the law confers on such officers. We have therefore given the sub-

ject the earliest attention. The obvious policy of this change was, that this board for the administration of county affairs, embracing many subjects of great importance to the community, should be so constituted as never to be without some experience; and by annually choosing one for the term of three years, one new member only would come in at one time, whilst the other two would be conversant with the practice of the board in previous years.

It appearing, by the facts stated in the petition and admitted by the answer, that the office of the respondent has been expressly vacated by the terms of this act, and the petitioner chosen in his place, it would seem necessarily to follow, that if this act is valid and constitutional, and capable of being carried into effect, according to its terms, the petitioner is duly elected and entitled to the office. It is suggested as one obvious objectionable feature in this statute, that it takes away from a party an office, to which he had been duly elected, according to the existing law, for a term of years, before the expiration of that term. But this forms no objection to its constitutionality. Where an office is created by law, and one not contemplated, nor its tenure declared by the constitution, but created by law solely for the public benefit, it may be regulated, limited, enlarged or terminated by law, as public exigency or policy may require. The administrative powers and duties, now held and exercised by county commissioners, have been placed under the jurisdiction of many different courts, officers and magistrates, since the adoption of the constitution, by changes of the law. They were originally vested in a court of sessions, composed of all the commissioned justices of the peace for the county, afterwards transferred to special courts of sessions, courts of common pleas, with and without the aid of special justices, and ultimately vested in the county commissioners. Their mode of appointment or election has been fixed, their tenure of office established, their powers restrained or enlarged, by the operation of successive laws, and at each of these changes many of those who were previously in office, for certain or uncertain terms, were necessarily divested of those offices. These changes by force of law have been acquiesced in.

And we are of opinion that the act in question, changing the time and mode of choosing county commissioners, and which seems to have been warranted by a long course of precedents, in regard to a class of officers nearly analogous, was not beyond the constitutional authority of the legislature. But it is in that respect only, that we consider its validity. We cannot go into the considerations of policy and expediency upon which it is founded; these are wholly for the legislature.

But although it has not been distinctly insisted in the argument, that this act is unconstitutional, yet it has been urged that, as it is unjust and injurious in its operation, it requires to be rigidly scrutinized; and that, looking at the whole act, it is so uncertain in its provisions, and so defective in its practical directions, that it cannot well be carried into execution, and is therefore void for uncertainty. It becomes therefore necessary to examine the statute with some care.

The argument is, that by the *St.* of 1854, *c.* 77, no sufficient provision is made for returning and examining the votes, recording and declaring the result, and giving notice to the persons chosen of their election. The provision, § 3, is substantially as follows: " At such annual election, there shall be one county commissioner chosen in the manner prescribed in the fourteenth chapter of the revised statutes for the election of county commissioners, except so far as such manner is changed by this act; such commissioner to hold his office for the term of three years, and until a successor is chosen and qualified in his stead."

When one statute thus refers to another, to avoid the prolixity arising from a repetition of all the provisions of the act referred to, it must be construed with this qualification, that the provisions of the act referred to shall be applied in all those particulars, in which they can be applied without leading to absurd results; and if they cannot be applied in all particulars, they shall be applied as nearly as possible consistently with the provisions of the new act. The fourteenth chapter of the revised statutes was a public act, relating to the choice of a well known body of public officers; all its provisions remained in

force, except so far as they were altered and changed by the act of 1854. In some important respects, this did effect a change; it provided for an election every year, instead of once in three years; it directed the choice of one commissioner, instead of three; and transferred the election from April to November. In most other important particulars, *c.* 14 of the Rev. Sts. remained in force. It provided for the issuing of warrants, the balloting by voters, the returns of votes by selectmen to the clerk's office; and it constituted a board of examiners, charged, amongst other public duties, with that of examining and declaring the result of such votes, issuing a new warrant in case of no choice, or to fill a vacancy; all this remained unchanged by *St.* 1854; and these regulations are all applicable to the choice directed to be made by the latter statute. When it is said in this statute, that county commissioners shall be chosen " in the manner prescribed in the revised statutes," we think this expression means not only the warrant for a meeting, and balloting by the voters in towns, but extends to all the other provisions necessary to give effect to the choice; such as returning, examining and declaring the votes, so as to make a complete election to the office.

But the point ultimately and most strongly relied on, to show that the *St.* of 1854 is irreconcilable with the Rev. Sts. *c.* 14, and therefore cannot be carried into effect, arises from the consideration of § 18 of *c.* 14 of Rev. Sts. which directs that the examiners shall meet on the Tuesday next succeeding the second Monday of April, and examine the returns; and hence it is argued that it would be absurd to suppose the legislature intended that the election should be held on the second Monday of November, and that the votes should be examined on the second Monday of April; and so that there is no intelligible or practical provision made for counting and declaring the votes.

To estimate this difficulty, it is necessary to examine the provisions of the Rev. Sts. a little more in detail. Section 17 directs how the meetings shall be called and held, the ballots taken, counted and declared by the selectmen, in open town meeting, and a record thereof made by the selectmen, who shall

within seven days transmit a copy of such record to the clerk of the court of common pleas, who shall transmit the same to the board of examiners. In fact, he is one of that board, as constituted by § 38 of the same chapter.

The things to be done then, and the order in which they are to be done, are these : The election on the first Monday of April ; seven days allowed to selectmen to make returns ; the meeting of the examiners on the day next after the time allowed for such returns, which must necessarily be eight days from the election. This is the substance of the direction. So by a subsequent section, when a vacancy is to be filled, the examiners are to issue their warrant, the like proceedings shall be had, and the examiners shall, within eight days, examine the returns. Here, as the time of the election is an uncertain day, the time for the meeting of the examiners cannot be fixed by naming the day of the week, as in the former instance ; but as it cannot be till the expiration of the seven days allowed for the return of votes by selectmen, and must not exceed eight days, it must be the day after that fixed for the returns, and therefore bears the same relation to the day of election, as that of the first, though necessarily expressed in different words.

We agree with the respondent that the legislature did not intend to change the day of election to November, and leave in force the provision that the examiners were to meet to receive the returns in April. The examination and declaration of the votes as soon as may be after they are given, consistently with the allowance of a reasonable time for town officers to return the votes, is so immediately connected with, and incidental to the election, that we have no doubt that the change of time for the election carried the change of time for the examination with it. But we think, taking the provisions together, the time for the examination is fixed with reasonable certainty. The election is still to be held on a certain Monday fixed by the constitution. Seven days are still allowed for the returns of the votes to the clerk of the court of common pleas, who is one of the examiners. By an analogy, which cannot easily be mistaken, we think the Tuesday of the next succeeding week to that on the Monday

of which the election is held, or in other words, eight days from the election, is the day for the examination.*

On the whole, the court are of opinion that this act was not void for uncertainty; that the respondent, having been legally superseded by the election of the petitioner, is no longer entitled to hold the office of county commissioner for the county of Worcester; and that the petitioner, having been duly elected and returned, according to the provisions of this statute, is entitled to enter upon and hold the office.

---

* By *St.* 1855, *c.* 3, passed on the 30th of January 1855, " in all fut ire elec-tions of county commissioners, the board of examiners in the several counties whose duty it is to examine the returns of votes, shall meet and discharge the duties required by law as to such elections, on the first Wednesday of the month next succeeding the election of any such officers."