## Commonwealth ex rel. *v.* McKenty, Appellant.

*Criminal law—Constitutional law—Indeterminate sentence—Act of May 10, 1909, P. L. 495.*

1. On an appeal from an order of the quarter sessions dismissing a petition for a writ of habeas corpus to the warden of a penitentiary, the appellate court will not pass upon the question of the unconstitutionality of the entire sec. 6 of the Act of May 10, 1909, P. L. 495, alleged to be unconstitutional because of the proviso in the section relating to the sentencing of persons twice before convicted, where it appears that the sentence involved in the petition did not apply to a prisoner twice before convicted.

2. The Act of May 10, 1909, P. L. 495, does not violate sec. 1, art. V, of the constitution which vests the judicial power of the commonwealth in the courts. It does not transfer judicial discretion to a nonjudicial board.

3. It is no usurpation of the judicial power of the commonwealth vested by the constitution in the courts, for the legislature to prescribe the maximum or the minimum or both the maximum and minimum punishment for crime.

4. The Act of May 10, 1909, P. L. 495, does not restrict or interfere with the pardon power vested in the governor by the constitution. It merely gives the prison inspectors a power to recommend, but there is nothing in the act making it obligatory upon the governor to adopt their recommendation.

5. The Act of May 10, 1909, P. L. 495, entitled "An Act authorizing the release on probation of certain convicts, instead of imposing sentence; the appointment of probation and parole officers and the payment of their salaries and expenses; regulating the manner of sustaining convicts in certain cases, and providing for their release on parole,"

does not violate sec. 3, art. III, of the constitution which provides "that no bill except general appropriation bills shall be passed containing more than one subject, which shall be clearly expressed in the title."

6. The words "regulating the manner of sentencing convicts," are sufficiently broad to cover not only the procedure in sentencing, but also the substance of the sentence.

7. The constitutionality of a law is to be presumed in the first instance, because the legislature, which was first required to pass upon the question, acting, as it must be deemed to have acted with integrity, and with a just desire to keep within the restrictions laid by the constitution upon their action, have adjudged that it is so.

Argued Oct. 28, 1912. Appeals, Nos. 179, by relator and defendant, and 220, from order of Q. S. Philadelphia Co., June T., 1909, No. 385, dismissing petition for habeas corpus in case of Commonwealth ex rel. Harry Bates v. Robert J. McKenty, Warden of the Eastern Penitentiary. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Petition for writ of habeas corpus.

The facts are stated in the opinion of the Superior Court.

*Error assigned* among others in both appeals was order of the court.

*Joseph H. Taulane,* assistant district attorney, with him *Samuel P. Rotan,* district attorney, and *John C. Bell,* attorney general, for Robert J. McKenty.—Where certain independent and separate provisions of an act are not embraced within its title, it is well settled that those provisions which are separate and independent and within the title are not affected: Dewhurst v. Allegheny, 95 Pa. 437; Allegheny County Home, 77 Pa. 77; Dorsey's App., 72 Pa. 192; Lea v. Bumm, 83 Pa. 237; Wynkoop v. Cooch, 89 Pa. 450; Bennett v. Maloney, 4 Kulp, 537; La Plume Boro. v. Gardner, 148 Pa. 192.

While it is true that heretofore the legislature has conferred upon the judiciary such discretionary power in imposing sentence, there is nothing in the constitution

vesting them with this power or that in any way prevents the legislature from depriving them of it: In re Marlow, 68 Atl. Repr. 171; Miller v. State, 149 Ind. 607 (49 N. E. Repr. 894); People v. Joyce, 246 Ill. 124 (92 N. E. Repr. 607); Wilson v. Com., 132 S. W. Repr. 557; State v. Farrell, 123 N. W. Repr. 1018; Com. v. Brown, 167 Mass. 144 (45 N. E. Repr. 1); Murphy v. Com., 172 Mass. 264 (52 N. E. Repr. 505); State v. Duff, 122 N. W. Repr. 829.

Taking the title as a whole, it is respectively submitted that it is amply sufficient and comprehensive to sustain the portions of the sixth section of the act in question: Allegheny County Home, 77 Pa. 77; Com. v. Moir, 199 Pa. 534; Russ v. Com., 210 Pa. 544; Sharpless v. Phila., 21 Pa. 147; Sugar Notch Boro., 192 Pa. 349; Phœnixville Road, 109 Pa. 44; Millvale Boro. v. Ry. Co., 131 Pa. 1; Com. v. Gilligan, 195 Pa. 504.

The most recent cases involving the sufficiency of the title are as follows: Com. v. Arow, 32 Pa. Superior Ct. 1; Com. v. Ayers, 17 Pa. Superior Ct. 352; Com. v. Clymer, 217 Pa. 302; Com. v. Fisher, 213 Pa. 48; New Brighton Boro. v. Biddell, 201 Pa. 96; Weiss v. Swift & Co., 36 Pa. Superior Ct. 376.

Error in sentence cannot be corrected on writ of habeas corpus: Ex parte Lange, 85 U. S. 163; Ex parte Parks, 93 U. S. 18; Sennott's Case, 146 Mass. 489 (16 N. E. Repr. 448); Stalker's Petition, 167 Mass. 11; Seller's Case, 186 Mass. 301 (71 N. E. Repr. 542); Ex parte Max, 44 Cal. 579; Ex parte Simmons, 62 Ala. 416; Com. v. Keeper of Jail, 26 Pa. 279; Com. v. McCabe, 22 Pa. 450; Beale v. Com., 25 Pa. 11.

The relator was not entitled to his discharge at the expiration of his minimum sentence. The court overlooked, however, that the real sentence of an indeterminate sentence is the maximum sentence, and it has been so held wherever the question has arisen. See Com. v. Brown, 167 Mass. 144 (45 N. E. Repr. 1); People v. Joyce, 246 Ill. 124 (92 N. E. Repr. 607).

Judicial discretion is not transferred to an administrative

board: Miller v. State, 149 Ind. 607 (49 N. E. Repr. 894); People v. Joyce, 246 Ill. 124 (92 N. E. Repr. 607); State v. Duff, 122 N. W. Repr. 829; In re Marlow, 68 Atl. Repr. 171; Wilson v. Com., 132 S. W. Repr. 557.

The pardoning power of the governor is not restricted.

The sixth section of the act of May 10, 1909, does not conflict with sec. 6 of art. III of the constitution: Emsworth Boro., 5 Pa. Superior Ct. 29; Gallagher v. MacLean, 6 Pa. Dist. Rep. 315; Searight's Estate, 163 Pa. 210.

*Edwin M. Abbott,* with him *John R. K. Scott,* for relator. —The title is defective in that (a) it contains more than one subject, and (b) the subject is not clearly expressed: Com. v. Aul, 18 Pa. Dist. Rep. 1040; Com. v. Darmska, 35 Pa. Superior Ct. 580; Phœnixville Road, 109 Pa. 44; Pierie v. Philadelphia, 139 Pa. 573; Stegmaier v. Jones, 203 Pa. 47; Dailey v. Potter County, 203 Pa. 593; Bennett v. Sullivan County, 29 Pa. Superior Ct. 120.

In the present act no notice is contained in the title (1) of the repeal of the commutation law; (2) of the increase in punishment for certain crimes; (3) of the creation of a new crime known as a third offense, and (4) of the repeal or amendment of pre-existing acts. The act of 1909 at least creates a minimum sentence for the crimes enumerated in the act of 1860, and in this particular, if in none other, clearly violates the constitutional requirement: Barrett's Appeal, 116 Pa. 486; Titusville Iron Works v. Keystone Oil Co., 122 Pa. 627; Lloyd v. Smith, 176 Pa. 213; Oil City and Petroleum Bridge, 9 Pa. Dist. Rep. 110.

That the relator had served his minimum sentence is not denied. Therefore, the whole subject can be compared to the similar condition which has recently been adjudicated in Michigan: In re Forscutt, 167 Mich. 438.

The act creates a new crime without due notice. It is special legislation: Smith v. Com., 14 S. & R. 69; Com. v. Morrow, 9 Phila. 583; Rauch v. Com., 78 Pa. 490; Conway v. Com., 4 Walker, 106; Kane v. Com., 109 Pa. 541; Phila. v. Market Co., 161 Pa. 522.

Judicial authority and discretion is transferred to a nonjudicial board: Matter of American Banking & Trust Co., 4 Pa. Dist. Rep. 757; Com. v. Halloway, 42 Pa. 446; De Chastellux v. Fairchild, 15 Pa. 18; Pitts. & Steubenville R. R. Co. v. Gazzam, 32 Pa. 340; Richards v. Rote, 68 Pa. 248.

The pardoning power of the governor and board of pardons is restricted. The act conflicts with art. III, sec. 6, of the constitution. The constitutionality of a statute may be tested by habeas corpus proceedings to release from custody one who has been imprisoned under it: Ex parte Hollman, 79 S. C. 9 (60 S. E. Repr. 19); Ex parte Siebold, 100 U. S. 371; 21 Cyc. 302; 15 Am. & Eng. Ency. (2d ed.), 204; Church on Habeas Corpus (2d ed.), 383; Com. v. Huntley, 156 Mass. 236 (30 N. E. Repr. 1127); People v. Durston, 119 N. Y. 569 (24 N. E. Repr. 6); Ossie v. State, 147 Ala. 152 (41 So. Repr. 945).

A party is entitled to a habeas corpus not merely where the court is without jurisdiction of the cause, but where it has no constitutional authority or power to condemn the prisoner: In re Neilsen, 131 U. S. 176 (9 Sup. Ct. Repr. 672); In re Terry, 128 U. S. 289 (9 Sup. Ct. Repr. 77); In re Reed, 100 U. S. 13; In re Yarbrough, 110 U. S. 651 (4 Sup. Ct. Repr. 152); In re Bonner, 151 U. S. 242 (14 Sup. Ct. Repr. 323); In re Fong Yim, 134 Fed. Repr. 938; Crooms v. Schad, 51 Fla. 168 (40 So. Repr. 497); Alvarez v. State, 50 Fla. 24 (39 So. Repr. 481); In re Harrison, 212 Mo. 88 (110 S. W. Repr. 709).

OPINION BY RICE, P. J., December 9, 1912:

Henry Bates, the relator, was found guilty of burglary, and thereupon was sentenced to pay a fine of $500 and to undergo imprisonment in the eastern penitentiary for a term of not less than two and one-half years and not more than ten years. Shortly after the expiration of the minimum term of imprisonment a writ of habeas corpus was awarded by the quarter sessions upon his petition, in which he alleged that he was entitled to discharge on

the ground that the Act of May 10, 1909, P. L. 495, under which the sentence was imposed, was unconstitutional. After hearing, the court held that the sixth section was unconstitutional because the title of the act was defective, and therefore no lawful sentence had been imposed; but also held that (we quote the words of the opinion) "there is no reason why he may not now be sentenced under the terms of the act of 1860. Justice requires that in imposing such sentence the imprisonment he has already suffered shall be taken into account; but requires nothing more." Accordingly, the court dismissed the petition for habeas corpus and remanded the relator for sentence under the act of 1860. From this order separate appeals were taken by the relator and the respondent, which, having been argued together, are now before us for disposition.

Section 6 of the act of 1909 reads as follows: "Whenever any person convicted in any court of this commonwealth, of any crime, shall be sentenced to imprisonment in either the Eastern or Western Penitentiary, the court, instead of pronouncing upon such convict a definite or fixed term of imprisonment, shall pronounce upon such convict a sentence of imprisonment for an indefinite term, stating in such sentence the minimum and maximum limits thereof; fixing as the minimum time of such imprisonment the term now or hereafter prescribed as the minimum imprisonment for the punishment of such offense; but if there be no minimum time so prescribed, the court shall determine the same, but it shall not exceed one-quarter of the maximum time, and the maximum limits shall be the maximum time now or hereafter prescribed as a penalty for such offense: (Provided, however, that when a person shall have twice before been convicted, sentenced and imprisoned in a penitentiary for a term of not less than one year, for any crime committed in this state or elsewhere within the limits of the United States, the court shall sentence said person to a maximum of thirty years). And provided further, that no person sentenced for an indeterminate term shall be entitled to any benefits under

the act entitled 'An Act providing for the commutation of sentence for good behavior of convicts in prisons, penitentiaries, workhouses and county jails in this state, and regulations governing the same,' approved May 11, 1901, P. L. 166."

1. It is argued by relator's counsel that this entire section is unconstitutional because (a) it creates a new crime without notice in the title, (b) it is special legislation. This argument is based on that portion of sec. 6 which for convenient designation we have inclosed in parenthesis. But it is argued by the commonwealth's counsel that, as the relator was not sentenced under that clause of the section, and as the provisions relating to indeterminate sentences are complete in themselves, and in no way dependent upon or affected by the provisions relating to the sentencing of prisoners twice before convicted of crime, no question as to the validity of that clause can properly be raised in this case. We concur in this view. It is fully sustained by the authorities cited in the brief of counsel for the commonwealth.

2. Another objection urged against the act is that it transfers judicial discretion to a nonjudicial board, and is in contravention of sec. 1, art. V, of the constitution, which vests the judicial power of the commonwealth in the courts. This objection is not well founded. It is no usurpation of the judicial power of the commonwealth vested by the constitution in the courts for the legislature to prescribe the maximum or the minimum or both the maximum and minimum punishment for crime. If this were held to be beyond the power of the legislature many acts would fall. Thus, it is pointed out in the commonwealth's brief, the punishment for murder of the first degree is death; of murder of the second degree upon second conviction, imprisonment for life; of selling liquor without license a fine of not less than $500 nor more than $5,000, and an imprisonment in the county jail of not less than three months nor more than twelve months; of publishing or uttering a false election certificate, an imprison-

ment of not less than six months nor more than two years; of assault and battery upon an elector, an imprisonment of not less than three months nor more than one year; of refusing to comply with the act regulating fire escapes, an imprisonment of not less than one month nor more than two months. If, as has been done in these and other instances, the legislature may, in prescribing punishment for crime, restrict the exercise of discretion committed to the court within fixed limits, it may withhold altogether discretionary power either as to the amount of fine or as to the length of imprisonment. With the wisdom of thus limiting or holding from the courts discretionary power in this regard, we have nothing to do; it is enough for present purposes to say that there is no room for doubt as to either proposition. Upon this subject Judge SULZBERGER well says: "The fourth ground of objection advanced is that the act transfers judicial discretion to a non-judicial board. Every department of the government has its proper function with reference to crime and its punishment. The legislature may define the crime and fix its punishment, the courts must hear and adjudge under the law so enacted by the legislature, while the executive is invested with certain powers of grace and pardon. The general power of grace and pardon is one of the sovereign powers inherent in the commonwealth. While the exercise of it in individual cases is by the constitution (art. IV, sec. 9) conferred upon the executive exclusively, the legislature may enact general statutes of the most merciful character, which may alter the whole law of punishment for crime thereafter committed, and such alteration may perhaps operate to alleviate punishments previously incurred. Under the Penal Code of 1860, and long before, a great portion of this sovereign mercy of the state was confided to the judiciary. The courts were invested with the widest discretion in pronouncing sentence. They could make the term of imprisonment as short as they deemed proper, but the statute limited its length by a specific maximum. This power of mercy, thus exercised by the

courts, was, however, conferred on them by the legislature. It is not inherent in the judicial power itself." (Nor, we remark parenthetically, was it uniformly granted to the court, as has been seen.) "There is no constitutional provision which expressly confers it upon the courts, nor is there a constitutional inhibition which prevents the legislature from making all sentences rigid and invariable. The necessary inference is that the administration of the state's mercy may be totally withdrawn from the courts without violating any of the provisions of the constitution."

3. Nor can the contention that the act restricts or interferes with the pardoning power vested in the governor by the constitution be sustained. The power given to the prison inspectors is not to release on parole at the expiration of the minimum term of the sentence, but is simply to recommend; and out of abundant caution the legislature provided in sec. 15 that the governor shall not "execute any of the rights or powers herein granted unto him" until the pardon board after full hearing upon due public notice and in open session, shall have recommended the commutation of sentence by release of parol. There is nothing in the act making it obligatory on the governor to adopt the recommendation of the prison inspectors or contravening in the slightest particular the provisions of sec. 9, art. IV, of the constitution relative to the granting of pardons and commutation of sentences.

The validity of indeterminate sentence laws similar to this has been under consideration in many jurisdictions, and is sustained by the great weight of authorities. Amongst the cases in which some or all of the questions raised here have been considered and discussed are: Com. v. Brown, 167 Mass. 144; Murphy v. Com., 172 Mass. 264; Miller v. State, 149 Ind. 607; Wilson v. Com., 141 Ky. 341; People v. Joyce, 246 Ill. 124, and cases there cited; In re Marlow, 75 N. J. L. 400; State v. Duff, 144 Iowa, 142. Viewing the case from the standpoint of principle, we entertain no doubt of the power of the leg-

islature to enact the statutory provisions under considera-
tion, and as the above and other well-considered adjudica-
tions show, this conclusion is in accord with the conclusion
reached by the courts in this country generally.

4. The remaining general objection to be considered
is that the act violates sec. 3, art. III, of the constitu-
tion, which provides, "that no bill, except general appro-
priation bills, shall be passed containing more than one
subject, which shall be clearly expressed in the title."
The particular objection urged upon our attention is as
to the title, which reads as follows: "Authorizing the
release on probation of certain convicts instead of imposing
sentences; the appointment of probation and parole
officers and the payment of their salary and expenses;
regulating the manner of sentencing convicts in certain
cases, and providing for their release on parole." The
particular stress of the argument against the sufficiency
of the title is put on the words "regulating the manner of
sentencing convicts." These words, it is contended,
indicate no more than that the subject of legislation was
the procedure in sentencing, not the substance of the
sentence. This construction would be in accord with one
of the definitions of the word "manner" given by the
lexicographers, but in ordinary usage a much broader
meaning is, in many connections, conveyed by the word.
This is shown not only by the dictionaries (see partic-
ularly Webster's New International Dictionary), but by
judicial decisions construing contracts, acts of assembly
and titles of such acts in which the word occurs. Amongst
the illustrative cases that may be cited are Northrop v.
Curtis, 5 Conn. 246; In re Monk, 16 Utah, 100; Kentucky
Union R. R. Co. v. Bourbon Co., 85 Ky. 98, 112; Taft v.
Adams, 69 Mass. 126; In re Narragansett Election, 16 R. I.
761. See also 19 Am. & Eng. Ency. Law, 918. In Erie v.
Caulkins, 85 Pa. 247, 253, Justice GORDON said: "It is
quite obvious that the word 'manner' must be construed
with reference to the contract in which it is found;" and
it is equally obvious that whether appearing in the title or

the body of an act, it must be construed with reference to the context and the general subject being legislated upon. The word has no such rigid or exclusive meaning ascribed to it in the dictionaries or attached to it in the common speech of the people as forbids its proper use to indicate anything but mere form, or style, or as prevents or excuses the courts from looking at the context in determining the meaning intended to be conveyed in a particular case. Here the title of the act, viewed as a connected whole, points to legislation involving a radical departure from the prevailing mode of punishing crime, i. e., of "handling," of "dealing with" that subject. It indicates that authority is given by the act, first, to release certain convicts on probation instead of sentencing them, secondly, to release on parole certain sentenced convicts, and third, as germane to the same general subject and as part of the same general plan, that direction is given as to how they shall be sentenced. Any legislator or other interested person who would assume from reading a title pointing to legislation involving such wide departure from the previous law, that the words "regulating the manner of sentencing" meant only the mere formalities of sentencing, would, it seems to us, be guilty of supine negligence. True, these words would not convey to his mind the full extent and precise nature of the change in the law that was to be made, but they were not calculated to avert inquiry upon that subject and thus to mislead. On the contrary, having regard to the connection in which they occur, they were sufficient to lead a man of ordinary intelligence and prudence to extend his inquiry beyond the title and into the body of the bill in order to ascertain the nature and extent of the regulations as to sentencing that were to be enacted. Fortunately, the constitutional provision which was adopted for a wise purpose has been made effectual for the accomplishment of that purpose without putting a construction upon it which would impede proper legislation. In a leading case on this subject it was said: "The purpose of the amendment is to

prevent a number of different and unconnected subjects from being gathered into one act, and thus to prevent unwise or injurious legislation by a combination of interests. Another purpose was to give information to the members or others interested, by the title of the bill, of the contemplated legislation; and thereby to prevent the passage of unknown and alien subjects, which might be coiled up in the folds of the bill. The amendment was found necessary to correct the evils of unwise, improvident and corrupt legislation, and therefore is to receive an interpretation to effectuate its true purpose. It would not do to require the title to be a complete index to the contents of the bill, for this would make legislation too difficult, and bring it into constant danger of being declared void. But on the other hand the title should be so certain as not to mislead:" Dorsey's Appeal, 72 Pa. 192. Two years later the court said: "The course of decision in this court has been intended to carry out the true intent of the amendment of 1864, as to the title and subject of bills, instead of resorting to sharp criticism, which must often bring. legislation to nought. The amendment of 1864 was in substance proposed in the constitutional convention of 1837–38, and rejected because it was feared it would render legislation too difficult and uncertain and lead to litigation. It will not do, therefore, to impale the legislation of the state upon the sharp points of criticism, but we must give each title, as it comes before us, a reasonable interpretation, ut res magis valeat quam pereat. If the title fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary. It need not be an index to the contents, as has often been said. But on the other hand it should not mislead or tend to avert inquiry into the contents, as was held in the case of the Union Passenger Railway Co., decided at Philadelphia in 1873:" Allegheny County Home's Case, 77 Pa. 77. No good purpose would be served by an attempt on our part to restate the principle in other words, or to cite the multi-

tude of cases in which it has been applied. It is sufficient to say that, in all of the cases that have arisen since, this construction of the constitutional amendment of 1864 has been recognized uniformly, and very often in the words above quoted, as the proper construction of sec. 3, art. III, of our present constitution.

Finally, it is to be observed that the right of the judiciary to declare a statute void, and to arrest its execution, is one which, in the opinion of all courts, is coupled with responsibility so grave that it is never to be exercised except in very clear cases. The constitutionality of the law is to be presumed, in the first instance, because the legislature, which was first required to pass upon the question, acting, as it must be deemed to have acted, with integrity, and with a just desire to keep within the restrictions laid by the constitution upon their action, have adjudged that it is so. "They are a co-ordinate department of the government with the judiciary, invested with very high and responsible duties, as to some of which their acts are not subject to judicial scrutiny, and they legislate under the solemnity of an official oath, which it is not to be supposed they will disregard. It must, therefore, be supposed that their own doubts of the constitutionality of their action have been deliberately solved in its favor, so that the courts may with some confidence repose upon their conclusion, as one based upon their best judgment:" Cooley's Constitutional Limitations (7th ed.) 254. This is a weighty consideration, and is always to be kept in mind before their deliberate action is set aside as in conflict with the fundamental law. As has been remarked in many cases, it is but a decent respect due to the legislative body by which any law is passed to presume in favor of its validity until its violation of the constitution is clearly proved: Wellington, Petitioner, 16 Pick. 87. This is the doctrine of our own cases as will be seen from the many citations in Com. v. Moir, 199 Pa. 534, and Com. v. Herr, 229 Pa. 132. "Undoubtedly many acts have been passed whose framers intended to evade

the constitutional prohibition. These, the courts have always unhesitatingly struck down, and may safely be relied upon to continue to do so, but where the legislative intent is not to evade the restrictions, the courts are not required to be astute in extending them over cases not really within the evil prohibited, though the form may have the appearance of coming within the literal meaning of the constitution:" Com. v. Gilligan, 195 Pa. 504. This was said with regard to the constitutional prohibition of certain classes of special legislation, but it is equally well settled by the authorities, and it is the dictate of reason that where there is no intent to evade the constitutional provision as to the title of an act, and the title is not misleading, the courts will not be astute in seeking for a construction of the words of the title that would result in nullifying the act.

Notwithstanding the very able opinion of the learned judge of the quarter sessions in support of a different conclusion, and the argument of the relator's counsel along the same lines, we are nevertheless unanimous in conclusion that the provisions of the act of 1909 properly brought into question in this case are not unconstitutional.

The order is modified by striking out the words "for sentence under the act of 1860," and as thus modified is affirmed.