COMMONWEALTH *vs.* ALMIRA WYMAN.

An offence of arson, committed while the revised statutes, prescribing the punishment of death for said offence, were in force, may be tried and punished under the subsequent statute of 1852, c. 259, reducing the punishment to imprisonment for life.

A woman, convicted of arson under *St.* 1852, c. 259, should be sentenced to imprisonment for life in the county jail or house of correction, in pursuance of Rev. Sts. c. 143, § 18.

THE defendant, being convicted of arson at the June term, of the court of common pleas, 1852, before *Mellen,* J., alleged exceptions to his ruling, the nature of which sufficiently appear in the opinion of the court. The case was argued at the October term, 1852.

*C. R. Train,* for the defendant. 1. The act of 1852, c. 259, repeals the first section, c. 126 of Rev. Sts. Dwarris on Statutes, 33 ; *Ellis* v. *Paige,* 1 Pick. 43–45 ; *West* v. *Pine,* 4 Wash. C. C. 691 ; *Moore* v. *Vance,* 1 Ham. 10 ; *Morrison* v. *Barksdale,* Harper, 101 ; *Adams* v. *Ashby,* 2 Bibb, 96.

2. So a statute, imposing a new penalty for an offence, repeals by implication so much of a former statute as established a different penalty. Dwarris on Statutes, before cited ; *Rex* v. *Davies,* 1 Leach, 271 ; *Heath's case,* 2 East P. C. 609 ; *Rex* v. *McKenzie,* Russ. & Ry. 429 ; *Nichols* v. *Squire,* 5 Pick. 168 ; *Commonwealth* v. *Kimball,* 21 Pick. 373.

3. To apply the act of 1852 to this defendant gives it an *ex post facto* operation. 1 Kent Com. (4th ed.) 409; *Fletcher* v. *Peck*, 6 Cranch, 138.

*J. H. Clifford*, (attorney-general,) for the commonwealth.

SHAW, C. J. This was an indictment charging the defendant with arson in burning a dwelling-house in the night time. It was charged in the indictment, and appeared by the evidence at the trial, that this offence was committed on the night of May 12, 1852, the trial having taken place in June. Between the time of the commission of the offence and the time of trial, the *St.* of 1852, *c.* 259, was passed, changing the punishment in three cases, — treason, rape, and arson, — substituting for the penalty of death, that of imprisonment in the state prison for life. At the trial, the counsel for the defendant moved the court to direct the jury that the defendant could not be convicted and sentenced; not under the revised statutes, which inflicted the punishment of death, because it was in effect repealed before the trial; and not under the *St.* of 1852, because it was not in force, and could not be violated, when the act of arson was committed. The court declined so to direct the jury, and thereupon the defendant was convicted. The defendant took exceptions, which have now been argued.

The court are of opinion that this direction was right. The provision of the Rev. Sts. *c.* 126, § 1, imposing the punishment of death for arson, was not in terms repealed by the *St.* 1852, *c.* 259. They are both affirmative; each affixes a certain, but different, penalty to the same act. Arson by the burning of a dwelling-house, in the night time, was an offence at common law, and neither statute did much more than declare the punishment. Where a subsequent act is not in terms repealed, the question, whether the prior act is repealed by implication, depends upon the point whether they are repugnant, or whether they may both well stand, and have their proper application. If they are repugnant, the former must yield, because, the presumption being conclusive that the legislature intended and determined that the latter should take effect, the implication is necessary, that they intended to

repeal the former, and the last declared will and purpose of the law-making power is the law of the land. But when there is no such repugnancy, there is no such repeal by implication.

Between these two legal enactments there is no such repugnancy. Each declares arson punishable. Two acts *in pari materia*, each declaring a certain act to be a crime, may well stand and be enforced at the same time. The repugnancy is in the provision for the punishment; therefore, the law declaring the punishment of death for the offence was repealed by an implication unavoidably necessary. Nor, although the act imposing the particular punishment was passed after the offence was committed, was it an *ex post facto* law, within the meaning of the maxim which considers such laws unjust, or contrary to the prohibition of the constitution. An *ex post facto* law is one which declares an act previously done, criminal and punishable, and which was not so when the act was done, or which declares a much higher punishment than existed at that time. But an act plainly mitigating the punishment of an offence is not *ex post facto;* on the contrary, it is an act of clemency. A law, which changes the punishment from death to imprisonment for life, is a law mitigating the punishment, and therefore not *ex post facto*. *Commonwealth* v. *Mott*, 21 Pick. 492; *Calder* v. *Bull*, 3 Dall. 386; 1 Kent Com. (7th ed.) 450; Story Const. § 1339.

The law, making the burning of a dwelling-house a crime punishable with death, was in force when the crime was committed; and the law fixing and mitigating the punishment was in force when the trial was had. By force of both combined the defendant is liable. This we think is not inconsistent in principle with *Commonwealth* v. *Cooley*, 10 Pick. 37 and *Commonwealth* v. *Marshall*, 11 Pick. 350; because in tne present case the whole law was not revised, but only that part of it which imposed the punishment.

A question then arises, how shall the convict before us, being a female, be sentenced, whether according to the literal terms of this last statute, viz: in the state prison, or may it be in the house of correction. The law was settled by the

revised statutes, as far as it could be settled by legislation, that when any female, of whatever age, should stand con victed of an offence punishable, in terms, by a general law by imprisonment in the state prison, either for life or a term of years, the court shall order such sentence to be executed either in the house of correction or the county jail, and not in the state prison. Rev. Sts. *c.* 143, § 18. This provision was decisive as to all cases, made punishable by law in the state prison, before the passage of the revised statutes, and also as to all offences made punishable by imprisonment by force of the revised statutes. They were considered all as one act, taking effect at one and the same time, and therefore, by a familiar rule of exposition, to be construed together, so that each part should have its proper effect. So construing them, the general rule was, that certain crimes should be punishable in the state prison; but, being accompanied by a simultaneous provision that all females should be exempt from imprisonment in the state prison, they would both have their natural and proper effect, by considering one as a general rule giving character to the offence, the other a specific exception, taking certain persons out of the operation of such general rule. Such was the construction practically put, and we have no doubt rightly and legally put, upon these provisions by all courts, tribunals, and magistrates. Therefore, although a vast number of cases existed, in which the law, in terms, declared that a person convicted of a crime described, should be punished by imprisonment in the state prison; yet, in precisely such a case, on such conviction, if the convict was a female, she was not sent to the state prison, but to the common jail or house of correction. The term of imprisonment, the solitary confinement, and hard labor being the same as those provided by the statute, and the judgment and sentence being in all respects the same, except the place of imprisonment. Such being the true and legal construction of this law, and such its practical effect, we suppose the arrangements of the state prison were essentially changed; suitable provision for the custody and employment of females, in sickness and in health, by night and by day, and all arrangements specially adapted to

the superintendence and discipline of females, ceased to be made.

In regard, therefore, to all offences, made such by the revised statutes, or by any prior law, the system was uniform and symmetrical; and though the law in terms declared that any person convicted of a specified offence should be punished in the state prison, yet, if the person convicted of one of these offences was a female, she was rightfully sentenced in the same manner, *i. e.* as to term of time, solitary imprisonment, and hard labor, in the common jail or house of correction.

The question, then, is, whether the like construction can be put upon a legal enactment, in precisely the same terms, passed after the revised statutes. There is no doubt that the legislature may repeal the law exempting females from imprisonment in the state prison, as well as any other law, and may require females to be so imprisoned. But the question still recurs, whether it is reasonable to presume that the legislature intended such an alteration, without some expression or some implication to that effect, other than the general words, declaring that any person, &c., shall be punished by imprisonment in the state prison, when, by the great body of the criminal law, including the revised statutes, such general words had been accompanied by an exception, exempting females from such punishment. It is the intention of the legislature, expressed in their act, expounded in reference to acts *in pari materia*, and other well established rules of construction, which we are to seek and carry into effect.

If the legislature intended to observe and maintain the policy of the revised statutes, exempting females from the state prison, and if we are not at liberty to hold that where they use general words, describing an offence, and making it punishable in the state prison, they do it under a belief that it is accompanied by the implied exception of females, it would follow that in every act, passed after the revised statutes, the punishment must be declared in the alternative, by considerable circumlocution, that if the party convicted is a female she shall not be sentenced to the state prison, but to the jail or house of correction; which, at least, would be attended

with much increase of labor and care in framing all penal statutes. If the legislature actually intended to change the policy of the revised statutes, and, in case of very high offences, or any other offences, make females again liable to imprisonment in the state prison, it might be done in the briefest terms, by adding after all persons, "male or female," or every person, "including females." The main object of the statute was, to substitute imprisonment for life for the punishment of death, in the three cases of treason, rape, and arson. The imprisonment is absolutely for life, subject, of course, to the pardoning power, but to no alternative in the judgment. The offences were still retained on the footing of capital cases, by being not bailable. There is no preamble or recital, no context or clause, in any part of the statute, indicating that the attention of the legislature was directed to the previous distinction between male and female, as to the place of imprisonment, or that their intent or purpose was to repeal the provision in Rev. Sts. *c.* 143, § 18; but the strong presumption is, that the legislature passed the recent act, in the terms used, under the belief that they were modified and controlled by that provision which changed the place of punishment in regard to females.

The court are therefore of opinion that the female before us, standing convicted of arson in burning a dwelling-house in the night time, must be sentenced to imprisonment for life, in the house of correction or common jail of this county.