## DAVIS v. THE STATE.

[No. 18,499. Filed Nov. 18, 1898. Rehearing denied Dec. 30, 1898.]

CRIMINAL LAW.—*Indeterminate Sentence Law.—Constitutional Law.
—Assault and Battery with Felonious Intent.*—The act of March 8, 1897 (Acts 1897, p. 219), known as the indeterminate sentence law, is not an *ex post facto* law within the meaning of section twenty-four, article one of the bill of rights as applied to an indeterminate sentence upon conviction of assault and battery with felonious intent, the crime having been committed before the passage of the act, as the new law does not add to or increase the punishment of the offense beyond that existing at the time of its commission. *pp. 35-37.*

SAME.—*Indeterminate Sentence Law.—Constitutional Law.—Repeal of Good Time Law.*—The act of March 8, 1897, (Acts 1897 p. 219), known as the indeterminate sentence law, is not *ex post facto* in that it repeals the good time law, as the good time law relates only to rules for the government of the prison officials, and the indeterminate sentence law substitutes a new and different method of crediting good time to the convict. *p. 37.*

SAME.—*Instructions.—Self-Defense.*—An instruction to the effect that a person is not justified in using a deadly weapon in defense of his person when assaulted by one who has no weapon in his hands, nor the appearance thereof, is erroneous. *pp. 37, 38.*

INSTRUCTIONS.—*Correct as Abstract Proposition of Law.*—An instruc-

tion which leaves the jury in doubt or uncertainty as to how it should be applied to the evidence, although correct as an abstract proposition of law, is erroneous. *pp. 38, 39.*

From the Clark Circuit Court. *Reversed.*

*M. Z. Stannard,* for appellant.

*W. L. Taylor,* Attorney-General, *W. A. Ketcham, Merrill Moores* and *Dickey & Aydelotte,* for State.

McCABE, J.—The appellant was tried by a jury in the Clark Circuit Court on an indictment charging him with an assault perpetrated April 13, 1896, on one Thomas Glynn, with the felonious intent to murder the said Glynn. The jury found appellant "guilty of the crime charged in the indictment, and that he be fined in the sum of $50, and that his age is fifty-four years." On this verdict the circuit court rendered judgment that he be confined in the state prison not less than two and not more than fourteen years, and for the fine of $50 and costs, over appellant's motions for a new trial, for a *venire de novo,* and in arrest of judgment. The assignment of errors calls in question these several rulings as the sole grounds on which a reversal of the judgment is sought. Under the motions for a *venire de novo* and in arrest of judgment, it is contended by appellant that the act approved March 8, 1897, the only law authorizing such a verdict and judgment, known as the indeterminate sentence law, is unconstitutional as to this case, because, as applied to this case, it is an *ex post facto* law, the alleged crime having been committed before the passage of the act. The constitutionality of the act in all other respects has recently been upheld by this court in *Vancleave* v. *State,* 150 Ind. 273; *Wilson* v. *State,* 150 Ind. 697; *Miller* v. *State,* 149 Ind. 607, 40 L. R. A. 109.

Section 24 of article 1 of the bill of rights in the Constitution provides that "No *ex post facto* law * * * shall be passed." Section 69 Burns 1894, section 69 Horner 1897. The question is what is an *ex post facto* law? This court, as

far back as 1822, defined the meaning of the phrase as fol-
lows: "The words *ex post facto* have a definite, technical sig-
nification. The plain and obvious meaning of this prohibition
is, that the legislature shall not pass any law, after a fact done
by any citizen, which shall have relation to that fact, so as to
punish that which was innocent when done; or to add to the
punishment of that which was criminal; or to increase the
malignity of a crime; or to retrench the rules of evidence, so
as to make conviction more easy." *Strong* v. *State*, 1 Blackf.
193. To the same effect are *Dinckerlocker* v. *Marsh*,
75 Ind. 548; *Hicks* v. *State*, 150 Ind. 293; *Commonwealth*
v. *Mott*, 21 Pick. 492; *State* v. *Arlin*, 39 N. H. 179; *Mullen*
v. *State*, 31 Ill. 444. At the time of the decision in *Strong*
v. *State*, *supra*, the same provision, as to *ex post facto*
laws, existed that exists now. Section 69, R. S. 1843,
article 1. In that case the punishment of the offense was
changed by law from whipping not exceeding 100 stripes
to confinement in the state prison, after the commission of
the offense and before the conviction. The sentence to a
fine and confinement in the penitentiary at hard labor for a
year and a day was affirmed as not being *ex post facto*. If
the substitution of confinement in the state prison at hard
labor for a period not exceeding seven years in place of whip-
ping not exceeding 100 stripes, as the statute in that case
provided, being enacted after the offense was committed,
could not be deemed to add to or increase the punishment
by the new law, and hence not *ex post facto*, much more can
it be justly held that the indeterminate sentence law does not
add to or increase the punishment of appellant's offense, be-
yond that existing at the time of its commission. The punish-
ment by law at the time of the commission of the offense
charged in the indictment was and is imprisonment in the
state prison not more than fourteen years nor less than two
years, and a fine not exceeding $2,000. The indeterminate
sentence law has not changed this, but only prescribes a
different method of fixing the amount of punishment within

those limits. And taking that whole law together, and reading it into the judgment of conviction in its reformatory character, it mitigates the severity of the punishment as prescribed in the criminal code, as we substantially held in *Miller* v. *State*, 149 Ind. 607, and hence it does not add to or increase the punishment, and is therefore not an *ex post facto* law as applied to this case. Such is the rule held in *Commonwealth* v. *Brown*, 167 Mass. 144; *In re Conlon*, 148 Mass. 168; *State, ex rel.*, v. *Peters*, 43 Ohio, St. 629.

The contention that the act is *ex post facto* because it repeals the good time law cannot be sustained. That law relates only to rules for the government of the prison officials. The indeterminate sentence law simply substituted a new and different method of crediting good time to the convict. The good time law does not apply to one sentenced under the indeterminate sentence law or the reformatory act.

Under the motion for a new trial, numerous instructions are complained of, one of which, given by the court on its own motion, is as follows: "12. Even if you believe the prosecuting witness made a rush or attack upon the defendant when he came out of his house, if you believe the prosecuting witness had no weapon in his hands or appearance thereof, then I instruct you that the defendant was not warranted in using a deadly weapon."

And another, given at the request of the prosecuting attorney, was as follows: "11. An assault or an assault and battery by a person upon another with his hands, arms, or head, or the force or momentum of his body, does not justify the use of a deadly weapon."

The defendant was a one armed man, his right arm having previously been amputated at the shoulder, and the evidence tended to show that Glynn and others had engaged in a quarrel with defendant in Jeffersonville, and that Glynn had drawn a beer faucet on defendant as if to strike him; that defendant immediately left them, and went to his residence in said city, and was followed by said Glynn along the

streets thereof; that defendant went into his house and got a revolver; and that Glynn, being a stout, robust man, stopped at defendant's front door, and, on defendant's coming out of his house, Glynn made a rush at defendant, to attack him, in a state of intoxication and a rage and passion, and defendant shot at him. These instructions inform the jury that a person assaulted by another, who has no weapon in his hands, or the appearance thereof, is not justified in using a deadly weapon in defense of his person. If that is the law, then in every conceivable case of a violent attack upon one by another, no matter what the circumstances may be, no matter what the disparity between the ages and physical strength of the two may be, the assaulted party must stand and take his chances of being knocked down and stamped into a jelly, or of being choked to death before he can lawfully use a weapon in his defense. Though the appearance and circumstances of the assault were such as to induce the reasonable belief to be honestly entertained by the defendant that his life was in danger, or that he was in danger of great bodily harm from the assault, he could not lawfully use a deadly weapon to repel such assault, unless the assailant had a weapon in his hands, or the appearance thereof, no matter how many he had about his person. This is not the law. *Presser* v. *State,* 77 Ind. 274-278; *Batton* v. *State,* 80 Ind. 394; *McDermott* v. *State,* 89 Ind. 187. But we have a case where an assailant was convicted of manslaughter, where he used nothing but his hands, thereby choking his victim to death, and that judgment was affirmed in this court. *Shields* v. *State,* 149 Ind. 395.

It is insisted by the State, however, that these instructions were correct as abstract propositions of law, and, construed along with other instructions given, make them altogether as a whole a correct statement of the law. As was said by this court in *Abbitt, Adm.,* v. *Lake Erie, etc., R. Co.,* 150 Ind. 498: "But even though the instruction in question, as formulated, upon any view, could be said to be a correct ex-

position of the law, which at least may be asserted as doubt-
ful, still it may be said that it is so framed as to present the
question to the jury as an abstract proposition, and not in a
manner applicable to the particular evidence in this case.
To say the least, it certainly would have left the jury in doubt
or uncertainty as to how it should be applied to the evidence
in this case, and for this reason alone the court was justified
in refusing to give it.   An instruction is not only required to
state correct legal principles, but it should so state them that
the jury may be able to apply them to the particular evi-
dence to which they are germane."

In any view of the case, the giving of the instructions
quoted was erroneous.   Therefore the court erred in over-
ruling the motion for a new trial.   The judgment is reversed,
and the cause remanded with instructions to sustain the de-
fendant's motion for a new trial.   The clerk is directed to
issue the proper order for the return of the prisoner.