## Commonwealth v. Kalck, Appellant.

*Constitutional law—Criminal law—Indeterminate sentence—Acts of May 10, 1909, P. L. 495, and June 19, 1911, P. L. 1055.*

1. The indeterminate sentence Acts of May 10, 1909, P. L. 495, and June 19, 1911, P. L. 1055, are a valid exercise of legislative power and nothing contained therein is in contravention of any provisions of the Constitution.

*Criminal law—Murder of the second degree—Sentence—Ex post facto law—Constitutional law—Indeterminate sentence—Act of June 19, 1911, P. L. 1055.*

2. The Act of June 19, 1911, P. L. 1055, as applied to a person who committed the crime of murder of the second degree prior to the passage of the act, but who was not sentenced until after the passage of the act, is not an ex post facto law, inasmuch as the act did not aggravate the crime or make it greater; or change the rules of evidence; or prescribe less or different testimony in order to convict; or change the punishment; or inflict a greater punishment than that prescribed by the law annexed to the crime at the time it was commmitted.

3. The Act of April 14, 1893, P. L. 17, fixed the maximum punishment for murder of the second degree at imprisonment for twenty years, and neither the Act of May 10, 1909, P. L. 495, nor June 19, 1911, P. L. 1055, repealed the Act of 1893; nor did they undertake to fix the punishment for any crime. They merely undertook to regulate the sentencing of convicts and the method of releasing them on parole.

4. The provisions of the Act of June 19, 1911, P. L. 1055, were intended to benefit convicted persons and to mitigate the severity of their punishment as prescribed by law. Such an act is not objectionable on the ground of being an ex post facto law, although passed after the crime was committed.

5. The Act of June 19, 1911, P. L. 1055, does not require the imposition of a more severe minimum sentence for murder of the second degree than the Act of May 10, 1909, P. L. 495, inasmuch as under the Act of 1909, the minimum time for which a sentence

could be imposed for second degree murder was five years, while under the Act of 1911, the minimum sentence may be much less. The Act of 1911 itself does not increase or decrease either the maximum or minimum term of imprisonment. The maximum time is prescribed by other statutes, and the minimum time is determined by the court.

6. A woman committed murder of the second degree on December 19, 1910. She was tried and found guilty on March 1, 1911, and on October 4, 1911, was sentenced to imprisonment for a period of not less than fifteen years nor more than twenty years. *Held,* that the prisoner was properly sentenced under the Act of 1911, and that she was not prejudiced in her rights by that act.

Argued January 13, 1913. Appeal, No. 285, Jan. T., 1912, by defendant, from judgment of O. & T., Philadelphia Co., Jan. S., 1911, No. 628, on verdict of guilty of murder of the second degree in case of Commonwealth v. Mary E. Kalck. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Indictment for murder. Before RALSTON, J.
The opinion of the Supreme Court states the case.

*Error assigned,* among others, was in sentencing the prisoner to imprisonment for a period of not less than fifteen years nor more than twenty years from the date of commitment.

*A. E. Hutchinson,* of *MacCoy, Evans & Hutchinson,* for appellant.—The sixth section of the Act of June 19, 1911, is unconstitutional as applied to the appellant, because it came into effect after the commission of the acts for which appellant was convicted, and increases the punishment from that existing at the time of the commission of the acts charged: Fletcher v. Peck, 10 U. S. (6 Cranch) 87; Re Medley, 134 U. S. 160 (10 Sup. Ct. Repr. 384); Kring v. Missouri, 107 U. S. 221 (2 Sup. Ct. Repr. 443); Garvey v. People, 6 Colo. 559; In re Lambrecht, 137 Mich. 450 (100 N. W. Repr. 606); Hart-

ung v. People, 22 N. Y. 95; People v. Johnson, 44 Misc. 550 (90 N. Y. Supp. 134); Murphy v. Com., 172 Mass. 264 (52 N. E. Repr. 505).

The constitutional prohibitions in regard to ex post facto laws are aimed at the statutes under which sentences are imposed, and not at the sentences themselves. Therefore, though the court under the Act of June 19, 1911, may impose a sentence with the same maximum and minimum terms as might have been imposed under the statutes in force at the time of the commission of the acts charged, yet since under the Act of 1911, the court may impose a heavier sentence than could have been imposed under the prior statutes, the Act of 1911 as applied to the appellant is unconstitutional: In re Murphy, 87 Fed. Repr. 549; Com. v. McDonough, 95 Mass. 581; Wilson v. Ry. Co., 64 Ill. 542; Jaehne v. New York, 128 U. S. 189 (9 Sup. Ct. Repr. 70); State v. Smith, 107 Pac. Repr. 980.

The Act of June 19, 1911, repeals Section 6 of the Act of May 10, 1909, and, therefore, appellant cannot be sentenced under this section of the earlier act, or under any prior act. She is, therefore, entitled to be discharged: Nusser v. Com., 25 Pa. 126; Hoffman v. Com., 123 Pa. 75; Com. v. Kimball, 38 Mass. 373; Abbott v. Com., 8 Watts 517; Com. v. King, 1 Wharton 448; Stoever v. Immell, 1 Watts 258; Com. v. Canal Co., 66 Pa. 41; Com. v. Standard Oil Co., 101 Pa. 119; Wilson v. Ry. Co., 64 Ill. 542; State v. McDonald, 20 Minn. 136; State v. Smith, 107 Pac. Repr. 980; State v. Hanover, 104 Pac. 624; State v. Meader, 62 Vt. 458 (20 Atl. Repr. 730).

*Joseph P. Rodgers,* Assistant District Attorney, with him *Samuel P. Rotan,* District Attorney, for appellee.— The indeterminate sentence law has been held valid as to past offenses, and also to be constitutional and not ex post facto, in the following cases: In re Murphy, 87 Fed. Repr. 549; Miller v. State, 149 Ind. 607 (49 N. E. Repr. 894); Hicks v. State, 150 Ind. 293 (50 N. E. Repr.

27) ; Davis v. State, 152 Ind. 34 (51 N. E. Repr. 928) ;
People v. Hayes, 140 N. Y. 484 (35 N. E. Repr. 951) ;
Clarke v. State, 23 Miss. 261; State v. Cooler, 30 S. C.
105.

OPINION BY MR. JUSTICE ELKIN, March 17, 1913:

The murder was committed December 19, 1910. The
indictment charged appellant with the commission of
the crime. She was tried March 1, 1911, and was found
guilty of murder of the second degree. A motion for a
new trial was argued March 31, 1911, and was held
under advisement until June 2, 1911, when it was over-
ruled. On October 4, 1911, appellant was sentenced
to undergo an imprisonment by separate or solitary con-
finement for a period of not less than fifteen years nor
more than twenty years in the Eastern Penitentiary.
The Act of June 19, 1911, P. L. 1055, relating to indeter-
minate sentences, was passed after the commission of
the crime, and subsequently to the trial and conviction,
but before the sentence was imposed. It is, therefore,
urged that the sentence was imposed under the Act of
1911, and that this act as applied to the crime for which
appellant was convicted is an ex post facto law and,
therefore, unconstitutional. The constitutionality of
the Act of 1911, as it may be applied to crimes com-
mitted after its approval, is not questioned by either
party. A reargument was ordered in this case for the
purpose of having the constitutionality of the Act of
1911, which necessarily involved the constitutionality
of the Act of May 10, 1909, P. L. 495, raised and dis-
cussed. But upon this question we are confronted with
the rather unusual positions of both parties, each insist-
ing upon the constitutionality of the Act of 1911. The
Commonwealth argues that the act was in force and that
appellant was properly sentenced under it, while ap-
pellant urges the validity of the act as the ground upon
which is based the contention that as to her crime it
is an ex post facto law. In this state of the record there

are no assignments of error raising many of the questions usually presented in considering what are commonly known as indeterminate sentence acts. It is necessary, however, in order to properly dispose of the present case to pass upon the constitutionality of the Act of 1911. The objections to the Act of 1909, and the same objections may be made to the Act of 1911, are summarized as follows:

(1) That the title is defective; (2) that the act creates a new crime without notice in the title; (3) that the act is special legislation; (4) that the act transfers judicial discretion to a non-judicial board; (5) that it assumes to restrict the pardoning power of the governor and the board of pardons; (6) that the sixth section of the act is in conflict with Article III, Section 6, of the Constitution. We do not feel warranted in discussing at length these several objections to the Acts of 1909 and 1911, which in one form and another, and in several cases, have been raised in different courts. In the present case these objections have not been urged because both parties choose to stand upon the constitutionality of these acts, at least this is their position as to the Act of 1911. We agree with counsel that the Act of 1911 is a valid exercise of legislative power, and that nothing contained therein is in contravention of any provision of the Constitution. The same may be said of the Act of 1909, which has been very fully considered by the Superior Court in an opinion recently handed down by President Judge RICE in the case of Com. ex rel. Bates v. McKenty, 52 Pa. Superior Ct. 332. In the supplemental paper book of appellant this opinion is printed in full, and since the questions there considered are incidentally involved in the present case, it becomes necessary for this court to approve or disapprove of what was there decided and the reasons given for the conclusions reached. We fully concur in the views expressed by the Superior Court speaking through its president judge in that case. The questions involved

were given full and exhaustive consideration and the reasons stated for the positions taken convince us that the right conclusion was reached.  We can see no valid reason for declaring either the Act of 1911, or the Act of 1909, unconstitutional because of any of the objections hereinbefore recited.  This is in accord with the views of counsel on both sides of the present case and it will serve no useful purpose to discuss these objections more in detail.  One question remains to be considered, and it is an important one.  Is the Act of 1911 as applied to appellant under the facts of the case at bar an ex post facto law?  The prohibition against the enactment of ex post facto laws in this country was first written into the Constitution of the United States and since that time has been incorporated into the organic law of every state. As far back as 1798, the Supreme Court of the United States in Calder v. Bull, 3 Dall. 386, undertook to define the meaning of an ex post facto law, and that case has remained as a leading authority on the question to the present time.  Under that decision ex post facto laws were grouped into four classes, as follows:  (1) Every law that makes an act done before the passing of the law, and which was innocent when done, criminal; (2) every law that aggravates a crime, or makes it greater than it was when committed; (3) every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime, when committed; (4) every law that alters the legal rules of evidence, and requires less or different testimony, than the law required at the time of the commission of the offense, in order to convict.  The rule as stated in that case has been amplified, discussed and applied in many subsequent cases, but its substance remains unchanged.  In the case at bar, the Act of 1911 did not make that a crime which was not a crime at the time of its passage.  It did not aggravate the crime, or make it greater than it was at the time of its commission.  It did not change the rules of evidence, nor did it prescribe less or different testi-

mony in order to convict. It cannot be said therefore
that in any of these respects the act in question is an
ex post facto law even as applied to appellant. It re-
mains to be considered whether this act changed the pun-
ishment, or inflicted a greater punishment, than that
prescribed by the law annexed to the crime at the time
it was committed. Counsel for appellant argue with
much force and marked ability that the punishment was
increased by the later act and that by reason thereof this
act must be declared ex post facto as to all crimes com-
mitted prior to its passage. The argument is that the
crime, of which appellant stands convicted, was com-
mitted while the Act of 1909 was in force, and that this
act fixed the punishment for murder of the second de-
gree at from five to twenty years, that is under an inde-
terminate sentence the maximum was twenty years and
the minimum not more than five years. The Act of 1911
changed this provision of the Act of 1909 by giving to
the trial court the power to fix the minimum sentence
at any number of years within the maximum limit, and
this is the matter about which appellant complains.
Under the Act of 1909 her minimum sentence would
have been five years, while under the Act of 1911 it was
fixed by the court at fifteen years, and in this way it is
said the punishment of appellant has been increased.
This position overlooks the fact that neither the Act of
1909, nor the Act of 1911, undertook to fix the punish-
ment for any crime, nor did these acts repeal the laws
then in existence prescribing penalties and punishments
for different crimes. The punishment for murder of the
second degree is fixed by the Act of April 14, 1893, P. L.
17, which amended the Act of March 31, 1860, P. L. 382.
The Act of 1893 provides that: "Every person duly
convicted of the crime of murder of the second degree,
shall, for the first offense, be sentenced to undergo an
imprisonment by separate or solitary confinement not
exceeding twenty years, and for the second offense for
the period of his natural life." This is the act, and the

only act, in force at the time the crime in the present case was committed, fixing the punishment for second degree murder. The Acts of 1909 and 1911 did not repeal the Act of 1893. The intention not to repeal acts prescribing penalties and punishments clearly appears in the title and all through the enacting clauses of the Acts of 1909 and 1911. These acts undertook to regulate, not the law which fixed the punishments, but the sentencing of convicts, and the method of releasing them on parole. The purpose of these acts was to regulate the control and discipline of persons convicted of crimes with a view to their reformation. Under these acts the courts can sentence in such manner as to give the offender an opportunity to secure a release on parole upon certain conditions within the control of the prison authorities when recommended by the board of pardons and approved by the governor. But nowhere in the Acts of 1909 and 1911 did the legislature undertake to prescribe penalties and punishments for crimes, as to which the law remained the same after as before the passage of these acts. Section 6 of the Act of 1911 provides that when a·person has been convicted of crime the court instead of sentencing for a definite fixed term under the law, that is the law fixing the punishment, "shall pronounce upon such convict a sentence of imprisonment for an indefinite term; stating in such sentence the minimum and maximum limits thereof; and the maximum limit shall never exceed the maximum time now or hereafter prescribed as a penalty for such offense." The act does not fix punishments; it relates exclusively to the manner of sentencing. Both acts expressly recognize as still in force the law fixing maximum punishments by providing that the court in imposing the sentence shall always be bound by the maximum punishment prescribed by law. At the time of the passage of these acts the maximum punishment for murder of the second degree was twenty years, and this is still the law, and the indefinite term for which sentence is imposed

under these acts must be within the maximum limit. This statutory punishment remains unchanged, but the court is given a discretion in the manner of imposing the sentence, and this was intended to work a substantial benefit to the convicted person as a reward for good conduct. This view finds further support in Section 4 of the Act of 1911, which relates to a convict released on parole, but who has violated the same. In a case of this kind it is provided, that when such a convicted person "shall be brought before the court which released him or her on probation," the court "may thereupon pronounce upon such defendant such sentence as may be prescribed by law, to begin at such time as the court may direct." All of which can only be taken to mean that the Acts of 1909 and 1911 were not intended to repeal former acts fixing punishments for crimes. The punishment annexed to the crime in the present case, at the time of its commission, was prescribed by the Act of 1893, and this punishment was neither changed nor increased, by the Act of 1911. We may safely conclude, therefore, under the well settled rule, that the statutory punishment having been neither changed nor increased by the Act of 1911, appellant cannot escape punishment on the ground of this act being an ex post facto law as to her.

This view is in accord with the trend of decisions interpreting indeterminate sentence laws in many other jurisdictions in which it was held that a sentence for an indefinite term must be deemed a sentence for the maximum term prescribed by law as a punishment for the offense committed. This view was first expressed in our own State by President Judge SULZBERGER in Com. ex rel. Bates v. McKenty, hereinbefore referred to as having been considered by the Superior Court. In that case the learned court below in passing upon the question we are now considering, said: "Assuming, as we do, for the purpose of interpreting the statute, that it is constitutional, it necessarily follows that the maximum sen-

tence is the only portion of the sentence which has legal validity, and that the minimum sentence is merely an administrative notice by the court to the executive department, calling attention to the legislative policy that when a man's so-called minimum sentence is about to expire, the question of grace and mercy ought to be considered and the propriety of granting a qualified pardon be determined." In State v. Perkins, 143 Iowa 55, in which a similar statute was considered, the court said: "The law is designated as an indeterminate sentence law because under its provisions the board of parole may order a release from prison regardless of the maximum fixed by law. Under similar laws for an indeterminate sentence, judgments conforming to the statutes have been held to be for the maximum period." Indeed, this view has been accepted by nearly all of the courts in which legislation of this character has been considered, as an examination of the following cases will show: In re Conditional Discharge of Convicts, 73 Vt. 414; People v. Illinois State Reformatory, 148 Ill. 413; People v. Joyce, 246 Ill. 124; State v. Peters, 43 Ohio 629; Com. v. Brown, 167 Mass. 144; Miller v. State, 149 Ind. 607; Davis v. State, 152 Ind. 34; People v. Hayes, 140 N. Y. 484. These cases go on the theory that when the sentence is for an indefinite term, and the law prescribes a maximum punishment for the crime committed, the prisoner in contemplation of that law is committed for the full term, but may secure a release at a much earlier period if by his deportment and good conduct he proves himself worthy of the clemency which it is the policy of indeterminate sentence laws to extend him.

A statute which mitigates the penalty is not objectionable on the ground of being an ex post facto law, although passed after the crime was committed: Com. v. Wyman, 66 Mass. 237; Com. v. Gardner, 77 Mass. 438; Dolan v. Thomas, 94 Mass. 421. So, too, statutes which relate to procedure or penal administration, or prison discipline, are not to be considered ex post facto, even

though the effect may be to enhance the severity of the punishment: Duncan v. Missouri, 152 U. S. 377; Cook v. U. S. 138 U. S. 157; Gut v. State, 76 U. S. 35; Marion v. State, 20 Neb. 233; People v. Mortimer, 46 Cal. 114. Indeed, it may be stated as a general rule, that no one has a right to insist that particular remedies shall remain unchanged, or that courts and their jurisdiction and the proceedings in them shall continue unaltered, or that there shall be no departure from established methods in prison discipline or penal administration. Retrospective legislation relating to crimes and punishments may or may not be declared unconstitutional on the ground of being ex post facto. The question in each case is whether it will increase the punishment, or deprive a party of substantial rights to which he was entitled under the law as it stood at the time the offense was committed. If the situation is not altered or changed to the disadvantage of the complaining party, the law even if passed after the offense was committed, is not ex post facto as to him. We are not familiar with any decision, and none has been called to our attention, declaring an act unconstitutional which related to prison discipline, or to penal administration, intended to benefit prisoners, on the ground of its being an ex post facto law, even if such an act was retrospective in its operation.

In the present case the maximum punishment for murder of the second degree under the Act of 1893 was an imprisonment of twenty years, and nothing contained in the Act of 1911 increased or aggravated the crime. The provisions of this act were intended to benefit convicted persons and to mitigate the severity of their punishment as prescribed by law. This act represents the humanitarian view of those most competent to speak on the question of the proper treatment of criminals. It is believed to be wholesome legislation and we can see no reason why courts should be astute in sustaining technical objections intended to strike it down.

There is another view that may deserve a passing thought. The Act of 1911 does not require the imposition of a more severe minimum sentence than the Act of 1909. Under the Act of 1909 the minimum time for which a sentence could be imposed for second degree murder was five years, while under the Act of 1911 the minimum sentence may be much less. Under this act the minimum term may be fixed at one day, or one month, or one year, or any number of years within the maximum limit, warranted by the facts of the case. It, therefore, cannot be said that the Act of 1911 in terms increased even the minimum term prescribed as part of the sentence under the Act of 1909. The Act of 1911 gives the court the widest discretion in fixing the minimum sentence. The act itself does not increase or decrease either the maximum or minimum term of imprisonment. The maximum time is prescribed by other statutes, and the minimum time is determined by the court. How then can it be said that the act is unconstitutional because it increases the punishment, which it does not attempt to do, or on the ground that it increases the minimum term of imprisonment, which it does not do, except in the sense that it vests the court with this discretion. In the present case, the fault, if there be one, would seem to be, not in the act, but in the sentence. The instances are rare in which courts would feel justified in declaring an act unconstitutional on the ground that the prisoner had been prejudiced by the severity of the sentence if within the law. We are not convinced that the Act of 1911 prejudiced appellant, or in any proper legal sense increased her punishment, or altered the situation to her disadvantage, within the meaning of the law.

We find no merit in any of the assignments of error and they are all dismissed.

Judgment affirmed, and record remitted in order that the sentence may be executed.