## Commonwealth *v.* Sweeney, Appellant.

*Appeals—Criminal law—Sentence—Minimum sentence—Final judgment—Habeas corpus—Act of June 29, 1923, P. L. 975.*

1. A sentence on a conviction of murder, where the trial court declines to limit the minimum term to one-half of the maximum as provided by the Act of June 29, 1923, P. L. 975, is a final judgment from which an immediate appeal lies.

*Constitutional law—Consideration of acts alleged to be unconstitutional—Construction—Presumption.*

2. When the constitutionality of an act of assembly is attacked, it is the duty of every judge, without regard to his opinion as to the necessity for the statute, or its wisdom, to seek a construction which will support the legislative interpretation of the constitution; and an act can never properly be declared void unless this is found to be impossible.

3. In construing an act, the presumption is that there has been a valid exercise of the legislative power, and the burden is upon the one who attacks its validity, to show clearly to the contrary.

*Statutes—Construction of statutes—Amendments—Construing statute with amendment.*

4. Where a statute is denominated an act to amend an earlier one, reciting its title, and repeating the words there used, the two acts are to be read together, and what is included in the first should be considered in passing on the sufficiency of the second.

*Constitutional law—Title of act—Acts of June 29, 1923, P. L. 975, and May 11, 1901, P. L. 166—Criminal law—Sentence—Maximum and minimum sentence.*

5. The words "regulating the manner of sentencing convicts in certain cases" contained in the title of the Act of June 29, 1923, P. L. 975, amending the Act of June 19, 1911, P. L. 1055, sufficiently indicate the matter included in the amended section whereby the proportion of the minimum to the maximum sentence is fixed, and the act does not violate article III, section 3, of the Constitution.

6. The proviso to the amended section, directing that its terms shall not abrogate the directions of the parole acts, or that of the Act of May 11, 1901, P. L. 166, regulating commutation, though not specially referred to in the title, does not invalidate the act.

7. The provision of the Act of 1923, which imposes on the court the duty of declaring a minimum of one-half of the possible maximum sentence, does not amend all acts which name the possible term of imprisonment upon conviction of the particular crime dealt with, inasmuch as it does not fix punishments, but relates exclusively to the manner of sentencing.

*Constitutional law—Amendment—Article III, section 6, of the Constitution—Act of June 29, 1923, P. L. 975.*

8. The Act of June 29, 1923, P. L. 975, does not violate article III, section 6, relating to the amendments of statutes.

9. The omission to set forth in full the part of the earlier statute to be amended, is not fatal.

*Constitutional law—Judicial power of the Commonwealth—Article V, section 1, of the Constitution—Act of June 29, 1923, P. L. 975.*

10. The Act of June 29, 1923, P. L. 975, does not violate article V, section 1, of the Constitution, providing that the judicial power of the Commonwealth shall be vested in specified courts.

*Constitutional law—Local or special laws—Article III, section 7, of the Constitution—Act of June 29, 1923, P. L. 975.*

11. The Act of June 29, 1923, P. L. 975, regulating the manner of sentencing prisoners does not violate article III, section 7, of the Constitution relating to local and special laws.

12. The legislature has the right to classify crimes, and designate the procedure at trial, or after sentence.

13. The act does not discriminate in favor of prisoners in penitentiaries standing convicted of felonies identical with those convicted of the same offense, confined in county prisons.

14. The transfer from a penitentiary to a local prison, as permitted by the Act of July 11, 1923, P. L. 1044, will not take the prisoner out of the class to which he was committed when sentenced, with the probable result that his imprisonment may be reduced below the minimum designated by the sentencing judge.

Argued October 16, 1924. Appeal, No. 359, Jan. T., 1924, by defendant, from judgment of sentence of O. & T. Phila. Co., May T., 1923, No. 71, on verdict of guilty of murder of the second degree, in case of Commonwealth v. Joseph Sweeney. Before MOSCHZISKER, C. J., WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Indictment for murder. Before McDEVITT, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the second degree, on which judgment of sentence was passed of imprisonment for a term of not less than eighteen years and not more than twenty years in the penitentiary. Defendant appealed.

*Error assigned* was the sentence, quoting charge as to sentence and exception thereto.

*Thomas J. Minnick, Jr.,* with him *Raymond A. White,* for appellant.—The Ludlow act was constitutional: Com. v. McKenty, 52 Pa. Superior Ct. 332; Halderman's Case, 53 Pa. Superior Ct. 554; Com. v. Kalck, 239 Pa. 533; Phila. v. Ry., 142 Pa. 484; Com. v. Cooper, 277 Pa. 554; Com. v. Grossman, 248 Pa. 11; Com. v. Puder, 261 Pa. 129.

*Maurice J. Speiser,* Assistant District Attorney, with him *Samuel P. Rotan,* District Attorney, for appellee, cited: Stegmaier v. Jones, 203 Pa. 47; Com. v. Morgan, 278 Pa. 395; Com. v. Miller, 63 Pa. Superior Ct. 548; Com. v. Dunleavy, 16 Pa. Superior Ct. 380; Com. v. Nuber, 6 Pa. Superior Ct. 420.

OPINION BY MR. JUSTICE SADLER, November 24, 1924:

One Emgable was shot and killed in the course of an attempt to rob, and Joseph Sweeney, defendant, with others, was charged with the crime. A verdict of murder of the second degree was rendered as to him. Later, the prisoner was called for sentence, and the learned court below imposed the maximum punishment of twenty years, as fixed by the Act of April 14, 1893, P. L. 17. It designated a minimum imprisonment of not less than eighteen years, declining to limit the term to one-half of the maximum, as directed by the Ludlow Act of June 29, 1923, P. L. 975, on the ground that this legislation was unconstitutional. By the present appeal, it is sought to test the correctness of this order.

Suggestion is made in the brief of appellee that any review is at present impossible, and must await the termination of the period of time which could undoubtedly have been named, assuming the enactment in question to be effective. If this were an application for a writ of habeas corpus, having for its purpose the discharge of the prisoner because of illegality of sentence, there would be merit in the contention, but the judgment en-

tered was final, and from it an immediate appeal is permissible.

Before discussing the particular objections which have been raised to the validity of the act involved, it may be well to refer briefly to the previous legislation, having for its purpose the release from servitude of persons whose conduct in prison justifies the exercise of clemency. The power of determining the extent of punishment to be inflicted was not, and is not now, the subject of constitutional limitation, and the legislature could fix the length of imprisonment upon conviction of a particular offense, making, if it saw fit, the term rigid and invariable, or allowing room for use of good judgment by the judge, made acquainted by the trial with the attending circumstances. Long before the enactment of the penal code, and after, there was confided to the judiciary largely the wisdom of exercising leniency in particular cases; and the widest discretion in the pronouncing of sentences was invested in the courts.

When the Crimes Act was prepared in 1860 (March 31, 1860, P. L. 382), more than 150 offenses were designated and punishment provided, usually coupled with the phrase that the sentence inflicted should not exceed the period named. This plan was deliberately adopted by the commissioners, as appears by their report, which says, in part: "It will be perceived that in prescribing the punishment of the various crimes, the maximum amount [only] to be inflicted has been defined; the principle found in some codes, that, upon conviction, a certain minimum amount of punishment shall, under any state of circumstances, be imposed on the culprit, being entirely excluded; a broad discretion being thus given to the courts, in order that the extent of punishment imposed should, in every case, bear a due relation to the relative enormity of the offense": Report on Penal Code, 5-7. The legislature has, however, provided in certain cases for fixed minimum punishments, of which

illustrations are to be found in the opinion filed in Com.
v. McKenty, 52 Pa. Superior Ct. 332, 338.

The first effort, after the passage of the code, to pro-
vide for the reward of prisoners whose conduct justified
it, appears in 1861, but the legislation then enacted fell
as the result of judicial decision: Com. v. Halloway, 42
Pa. 446. It was followed by a second commutation act
(May 21, 1869, P. L. 1267), and this in turn gave way
to the general legislation now in force: Act May 11,
1901, P. L. 166; In re Paroles, 23 Pa. Dist. R. 585; Com-
mutation Act, 23 Pa. Dist. R. 100. Provision for the
parole and probation of prisoners in certain cases is first
found in 1909: Act May 10, 1909, P. L. 495. This act
was extended in 1911 (Act June 19, 1911, P. L. 1059), so
as to grant to judges the right to parole prisoners con-
fined in county jails, or workhouses, and, in 1921, so as
to include those held in houses of correction: Act May 5,
1921, P. L. 379. The power may now be exercised by the
court, where the prisoner is so incarcerated by virtue of
its commitment, or by that of magistrates, aldermen and
justices, after hearing upon petition, of which due notice
has been given: Act May 11, 1923, P. L. 204.

Where the offense is one punishable by sentence to a
penitentiary, release is to be asked, and secured, in a
different manner. Side by side with the parole acts are
found those providing for indefinite sentences, in that
both a maximum and minimum time of imprisonment
shall be fixed, and lodging in a board of inspectors the
power and duty to recommend appropriate action, after
the expiration of the minimum period. The first of this
legislation is found in 1909: Act May 10, 1909, P. L.
495. Here appears the direction that the minimum shall
not exceed one-fourth of the maximum, but it is the lat-
ter which is to be treated as the actual sentence, the
defendant merely being given the right to apply for
relief at the end of the shorter term designated: Com. v.
Kalck, 239 Pa. 533. This act of assembly was the sub-
ject of attack, but its constitutionality was sustained on

appeal to the Superior Court (Com. v. McKenty, 52 Pa. Superior Ct. 332), later approved by this court in a proceeding involving the same legislation, and also the statute which next followed: Com. v. Kalck, supra. In 1911, a second act was passed (Act June 19, 1911, P. L. 1055), repealing that of 1909, and again directing the imposition of indeterminate sentences in the instances set forth, but it fixed no proportion between the high and low term to be named, leaving the determination of the latter within the discretion of the court. Later, in 1923 (Act June 29, 1923, P. L. 975), the sixth section was changed so as to cover all offenses which could be punished by imprisonment in the penitentiary, though the commitment was to other institutions, and providing that the minimum should never exceed one-half of the maximum. There was added a proviso that the enactment should not interfere with the operation of the commutation or parole acts to which we have previously referred.

This amendment is attacked as unconstitutional on many grounds. As was said by the present Chief Justice, in Com. v. Snyder, 279 Pa. 234, 239, "We must approach the solution of the questions involved with the following general principle in mind: When the constitutionality of an act of assembly is attacked, it is the duty of every judge,—without regard to his opinion as to the necessity for the statute, or its wisdom,—to seek a construction which will support the legislative interpretation of the Constitution, and an act can never properly be declared void unless this is found to be impossible." "The legislature is the sole judge of the wisdom and expediency of a statute, as well as of the necessity for its enactment, and whether the legislation be wise, expedient or necessary is without importance to the court in determining its constitutionality. In other words, the assembly has a free hand to legislate on every subject in such manner as it deems proper unless there is a constitutional prohibition clearly expressed or necessarily implied": Com. v. Grossman, 248 Pa. 11, 15. In construing an act, the

presumption is that there has been a valid exercise of the legislative power, and the burden is on the one who attacks its validity to show clearly to the contrary: Com. v. Puder, 261 Pa. 129; Buffalo Branch, M. Film Corp. v. Breitinger, 250 Pa. 225.

The statute in question is denominated an act to amend that of 1911, reciting its title, and repeating the words there used.  The two are to be read together, and what is included in the first should be considered in passing on the sufficiency of the second: Com. v. Dale Borough, 272 Pa. 189.  The contention is made that the use of the phrase "manner of sentencing" does not sufficiently indicate the matter included in the amended section whereby the proportion of the minimum to the maximum sentence is fixed, and it is urged that a reading of it would indicate the procedure to be followed rather than the form and extent of punishment to be imposed.  This same phrase is found in the title of the first of the acts referred to (Act May 10, 1909, P. L. 495), and, in an able argument by a court below, the construction now urged was given, and the act held to be invalid on this ground: Com. ex rel. Bates v. McKenty, 21 Pa. Dist. R. 589.  On appeal, however, the Superior Court declined to adopt the conclusion reached, and the same question now presented was then carefully considered, and the constitutionality of the legislation upheld: Com. v. McKenty, 52 Pa. Superior Ct. 332.  A repetition of what is there said would be useless, and unduly prolong this opinion.  The Act of 1911, as amended, uses the same words which were alleged to be objectionable in the earlier legislation, and, for similar reasons, it was sustained, when its title was made the subject of attack: Com. v. Kalck, supra.  A like result must be reached in the present case, which, as to punishment, merely repeats section six of that act, with the addition as to the proportion that the minimum term shall bear to the maximum.  As the law now stands, it is fixed at one-half instead of one-fourth, as appeared in the Act of 1909, held

constitutional, as we have already noted. The proviso to the amended section, directing that its terms shall not abrogate the directions of the parole acts, or that of 1901 regulating commutation, though not specifically referred to in the title, clearly would not invalidate the legislation. It is merely a limitation upon the operation of the earlier provisions as to the "manner of sentencing," which we find were within the scope of the title employed.

Nor are we impressed with the suggestion that the duty to declare a minimum of one-half of the possible maximum sentence, in effect amends all acts of assembly which name the possible term of imprisonment upon conviction of the particular crime dealt with. In answering a similar complaint, Justice ELKIN said, in Com. v. Kalck, supra, p. 539: "This position overlooks the fact that neither the Act of 1909, nor the Act of 1911, undertook to fix the punishment for any crime, nor did these acts repeal the laws then in existence prescribing penalties and punishments for different crimes...... [p. 540]. Nowhere in the Acts of 1909 and 1911 did the legislature undertake to prescribe penalties and punishments for crimes, as to which the law remained the same after as before the passage of these acts......The act does not fix punishments; it relates exclusively to the manner of sentencing. Both acts expressly recognize as still in force the law fixing maximum punishments by providing that the court in imposing the sentence shall always be bound by the maximum punishment prescribed by law......[p. 542, after citing certain authorities]. These cases go on the theory that when the sentence is for an indefinite term, and the law prescribes a maximum punishment for the crime committed, the prisoner in contemplation of that law is committed for the full term, but may secure a release at a much earlier period if by his deportment and good conduct he proves himself worthy of the clemency which it is the policy of indeterminate-sentence laws to extend him." It follows from

what has been said that the title to the Ludlow Act is constitutionally sufficient.

Again, it is argued that the legislation in question cannot be sustained because it is an amendment to the original act, and fails to reprint section six without the amending words, though, as changed, it is given in full. This complaint is without merit. It has been customary, for the sake of convenience, to set forth in full the part to be modified, yet this is not the result of any constitutional requirement, and the omission is not fatal, as recently held by this court when the same proposition was presented: Com. v. Cooper, 277 Pa. 554. An express declaration that such repetition should not be made is now found in the Act of March 16, 1923, P. L. 11.

Appellant further insists, the legislation is in violation of article V, section 1, of the Constitution, providing that the judicial power of the Commonwealth shall be vested in the named courts, and that for the legislature to regulate the manner of sentencing violates this clause. As noted, in the past a large discretion in imposing sentence rested in the judiciary, and any term could be designated, so long as it did not exceed the maximum fixed by the act of assembly defining the crime. The legislature had the right to designate the maximum, and likewise can, if it sees fit, name the minimum. The necessity or wisdom of so doing is a question for its determination. The same objection was raised in the earlier cases, to which we have referred, and held to be untenable. Nothing can be profitably added to the discussion of Judge Sulzberger, in Com. v. McKenty, 21 Pa. Dist. R. 589, of Judge Rice, in Com. v. McKenty, 52 Pa. Superior Ct. 332, and Justice Elkin, in Com. v. Kalck, 239 Pa. 533. If the views there expressed are correct, and we approve of them, then the suggestion of invalidity on this ground must be held to be without avail.

A like conclusion is reached in answer to the proposition that article III, section 7, of the Constitution, pro-

hibiting the passing of local or special laws, renders void the present act. It is said that the result of the indeterminate sentence is to distinguish between penitentiary offenses and others, and to provide a different system for release on good behavior. The legislature had the right to classify crimes, and designate the procedure at trial, or after sentence. For example, it may name those offenses which should be triable in the quarter sessions and those exclusively to be heard by the court of oyer and terminer. It may provide for long or short sentences, or for a fine only, make differences in punishment where the conviction is of a second offense (Com. v. Aul, 18 Pa. Dist. R. 1040, 1047), and regulate the manner in which the application for relief from further punishment may be made, permitting, in one case, the application to the judge of the court having jurisdiction, and, in another, to a board of inspectors, who may recommend to the governor such action as it deems appropriate. See Com. v. Puder, 261 Pa. 129.

Nor can it be said the operation of this act discriminates in favor of prisoners in penitentiaries standing convicted of felonies identical with those convicted of the same offense, confined in county prisons. Each class of criminals is treated equally with all of the other members in the same situation, and though the Transfer Act of 1923 (Act July 11, 1923, P. L. 1044), makes possible the removal of prisoners from penitentiaries, and placing them in local institutions, yet it is expressly provided by section four that "such person or persons as may be so transferred or retransferred shall be subject to the same term of imprisonment as that imposed upon them at the time of sentence under law, as attached to sentence at the time the same was imposed, either as to parole or as to commutation by reason of good behavior." Therefore it cannot be successfully contended, as suggested by the court below, that the transfer from a penitentiary to a local prison would take the prisoner out of the class to which he was committed when sentenced, with the possi-

ble result that his imprisonment might be reduced below the minimum designated by the sentencing judge.

Having given careful consideration to all of the many propositions raised, and in view of the fact that it is not the province of the court to determine the wisdom of legislation, so long as the same is constitutionally permissible, we are convinced that the Act of 1923, in question, must be sustained. In holding to the contrary, the learned court below erred.

The judgment is reversed, and the record is remitted, with direction that the defendant be resentenced in accordance with law.