## Commonwealth, ex rel., v. Smith, Warden, et al.

*Patrick J. Friel,* for petitioner.

*Michael A. Spatola,* Special Deputy Attorney General, contra.

MacNeille, J., February 24, 1936.—In the habeas corpus proceeding now before the court for disposition, the relator, Samuel Abrams, was convicted of robbery and sentenced to the Eastern State Penitentiary for not less than 2½ years nor more than five years. At the expiration of the minimum sentence the relator made application to the board of trustees of that institution for his parole, and the board recommended that the application be refused for a period of one year on account of his prior criminal record. The relator, in this proceeding, questions the right of the said board to take such action on account of his prior criminal record, where his institutional record has been admittedly good.

Section 9 of the Act of June 19, 1911, P. L. 1055, provides in part as follows:

"If it shall appear to the Board of Inspectors of any penitentiary in which a convict is imprisoned, upon an

application by a convict for release on parole, that there is a reasonable probability that such applicant will live and remain at liberty without violating the law, then said board shall recommend to the Governor that such convict be released on parole".

This section gives the board broad discretion to decide whether it should recommend a parole or not at the expiration of the minimum sentence, and in no way limits the factors which it is to take into consideration in arriving at its conclusion.

In the case of Commonwealth, ex rel., v. McKenty, 21 Dist. R. 589, 592, the court said:

"The first contention of the defendant is, in substance, that the Act of 1909 intended to fix the minimum sentence as the true punishment for the offence and to declare the period elapsing between the expiration of the minimum sentence and the expiration of the maximum sentence as a prolongation of the punishment, on account of some evil discovered in the character of the prisoner while serving his minimum sentence. There are some parts of the act which seem to favor this view. The establishment of the minimum sentence for the whole list of offences from which this feature was totally absent would seem to have some significance. Moreover, by the 8th section of the act, the board of inspectors of the penitentiary are required to meet once in each month, and at each meeting every prisoner whose minimum term of sentence will expire within three months may appear and apply for his release on parole. . . .

"These provisions manifestly have in view the probability that in many cases the minimum term of imprisonment will be a sufficient incitement to future good conduct. They do not, however, grant any right to the defendant, save the right of having his request for discharge on parole considered. His request being made, it lies with the inspectors to give or to withhold a favorable recommendation to the Governor. The act prescribes no specific test of the prisoner's conduct. It does not specify what

shall entitle him to a favorable report, nor does it indicate by what act or omission he incurs the danger of an unfavorable report. The act is equally silent with respect to the function of the inspectors. No rule is given to guide their judgment. Everything is left to them in generous reliance on their wisdom and justice. The facts which influence them, the reasons which sway them, are all their own. As law is a rule of conduct presumed to be known by all, it is plain that, whatever may be the proper designation of the functions of the inspectors with respect to the disposition of the prisoner, the latter can, in no event, be said to have acquired a legal right, the denial of which by the inspectors may be redressed by a court. This conclusion disposes of the prisoner's contention that he has a legal right to his discharge on parole by the terms of the Act of 1909."

In the case of Commonwealth v. Kalck, 239 Pa. 533, 541, the Supreme Court said:

"This view is in accord with the trend of decisions interpreting indeterminate sentence laws in many other jurisdictions in which it was held that a sentence for an indefinite term must be deemed a sentence for the maximum term prescribed by law as a punishment for the offense committed. This view was first expressed in our own State by President Judge Sulzberger in Com. ex rel. Bates v. McKenty, hereinbefore referred to as having been considered by the Superior Court. In that case the learned court below in passing upon the question we are now considering, said: 'Assuming, as we do, for the purpose of interpreting the statute, that it is constitutional, it necessarily follows that the maximum sentence is the only portion of the sentence which has legal validity, and that the minimum sentence is merely an administrative notice by the court to the executive department, calling attention to the legislative policy that when a man's so-called minimum sentence is about to expire, the question of grace and mercy ought to be considered and the propriety of granting a qualified pardon be deter-

mined.' In State v. Perkins, 143 Iowa 55, in which a similar statute was considered, the court said: 'The law is designated as an indeterminate sentence law because under its provisions the board of parole may order a release from prison regardless of the maximum fixed by law. Under similar laws for an indeterminate sentence, judgments conforming to the statutes have been held to be for the maximum period.' Indeed, this view has been accepted by nearly all of the courts in which legislation of this character has been considered, as an examination of the following cases will show: In re Conditional Discharge of Convicts, 73 Vt. 414; People v. Illinois State Reformatory, 148 Ill. 413; People v. Joyce, 246 Ill. 124; State v. Peters, 43 Ohio 629; Com. v. Brown, 167 Mass. 144; Miller v. State, 149 Ind. 607; Davis v. State, 152 Ind. 34; People v. Hayes, 140 N. Y. 484. These cases go on the theory that when the sentence is for an indefinite term, and the law prescribes a maximum punishment for the crime committed, the prisoner in contemplation of that law is committed for the full term, but may secure a release at a much earlier period if by his deportment and good conduct he proves himself worthy of the clemency which it is the policy of indeterminate sentence laws to extend him."

In the case of Commonwealth v. Sweeney, 281 Pa. 550, 555, the court said:

"The first of this legislation is found in 1909: Act May 10, 1909, P. L. 495. Here appears the direction that the minimum shall not exceed one-fourth of the maximum, but it is the latter which is to be treated as the actual sentence, the defendant merely being given the right to apply for relief at the end of the shorter term designated: Com v. Kalch, 239 Pa. 533."

In addition to that, section 7 of the Act of June 19, 1911, P. L. 1055, provides that the clerks of the several courts of quarter sessions and oyer and terminer shall forward to the wardens of the State penitentiaries information with reference to each convict, containing the

criminal record of the convict, notes of testimony of the trial, if available, and other information, which would be useless if the board were not to take into consideration the criminal records and other information furnished to them.

While the board has the right to consider prior criminal records, it should do so, and undoubtedly does so, with great caution, always remembering that in all cases the maximum punishment is prescribed by statute and it is the legislative intent that the minimum sentence should not exceed half of the maximum, and that undoubtedly in practically all cases the prior criminal record is reflected in the sentence previously imposed by the court and should therefore be taken into consideration by the board only in exceptional cases on application for a parole.

However, we totally fail to find any authority, either in the Act of June 19, 1911, P. L. 1055, or any of the other acts, for the board to resentence or impose an additional sentence, or to fix a time during which no application for a parole can be made. Section 9 of the above act provides that the board may recommend a parole, and section 11 that it can refuse to do so, but must state the reasons, and that is the full extent of the powers given to the board. The board is certainly without authority to sentence the prisoner, either because of his prior record or for any other reason. That the board admitted this is obvious from its order made in the case of Samuel Abrams C 8990, in which, after the word "remarks", the board wrote: "Refused 1 year for criminal record".

The Act of June 29, 1923, P. L. 975, prohibits even the courts from imposing a sentence in which the minimum exceeds one half of the maximum, and such power certainly cannot be presumed to have been denied the courts and given to the board, which would be the result if the board should be permitted to assume the authority.

While the board may not arrogate to itself the power to sentence, it has, however, authority at the hearing to deny parole for whatever appears to it to be sufficient reason, or it may recommend parole, fixing any future date on which it shall become effective if that date shall arrive before the maximum sentence is completed.

For the reasons indicated, the writ is, therefore, except as above stated, discharged.