## Commonwealth v. Prince

*Geary & Rankin*, for petitioner.

*Louis A. Bloom*, assistant district attorney, for Commonwealth.

MACDADE, J.—This defendant, Sylvester Prince, was convicted of voluntary manslaughter, being charged with having mortally wounded one Austin E. Wilmore on March 24, 1930, at 513 Fern Street, Darby, in this county, by making an assault on him, the said Austin E. Wilmore, and then and there feloniously, wilfully, and in his malice aforethought killing and murdering. He immediately became a fugitive from justice.

On October 1, 1930, we sentenced this defendant to the county jail for a period of not less than six years and not more than 12 years at separate and solitary confinement at hard labor.

Before passing sentence, the court (MacDade, J.) said to the distinguished attorney for the defendant, who was pleading that justice be tempered with mercy and that the mental condition of the defendant be considered, that it was fortunate for him "that the jury was so lenient with him, that he was convicted of manslaughter. The circumstances are such that he could have been convicted of murder in the first degree and with death as a penalty. The only excuse for him, and you seem to think that is an excuse, is that he is somewhat mentally deficient, but his whole career appealed to me as one of wilful violation of rules in every respect, no decency at all, no filial devotion to his parents. There are too many of these young fellows running around now, holding people up on the streets, robbing them of their possessions, knocking people off, as they call it, and committing all sorts of heinous crimes. They are what we call 'racketeers' and most of them are young men and they seem to be proud of the term. However, we serve notice upon them that when we get them before us we propose to give them the limit. These people are cowards. They are afraid to move without a gun. I think the trouble with this young man is his addiction to rum. They get that stuff in them and they prey upon the innocent people. I think he has been a victim of bad company as well, although I don't want to relieve him of any of the responsibility in any way. I have learned something

about his associations with other people who are being sought and who have actually been involved in crime. I understand that, if I am not mistaken, even though he were acquitted of this charge he would have been taken to Philadelphia and prosecuted for a number of crimes which they believe he has committed, holdup jobs, and I believe he is implicated in some of these escapades where automobiles are stolen and later abandoned. At least he has been running around with some who are in that business. They are trying to break up the practice of these fellows stealing these automobiles and committing holdup jobs and abandoning the automobiles. That's what they seem to have on this man. At least he is associated with a crowd or he has companions who are engaged in that practice and it may be a good thing that we have gotten him here and that he has been convicted. It may be his salvation. There may be some hope for his redemption, and I am very glad to hear your suggestion that he be committed to the county institution, or some place at Broadmeadows, for that is the place for sending young men with the idea of redeeming them, if possible, if there is any chance at all, and later have them returned to society, coming back to us as a good citizen and right at that time in life where he may make something of himself. It perhaps is a good thing that he is being taken away from society just now and sent to a place where he will not have an opportunity to develop along the lines he apparently has started in, or some other avenue, and with your coöperation and interest in him perhaps we can save him."

He being incarcerated nearly four years, we are now confronted with a petition for parole, the import of which is that he has been rehabilitated and is now fit to be returned to society. The formal reasons presented are:

"That your petitioner on July 11, 1930, surrendered himself to the district attorney and was committed to the county jail of Delaware County to await trial on the said charge of murder and your petitioner has been incarcerated in said jail since July 11, 1930, and from October 1,

1930, has been incarcerated in said jail by virtue of said sentence. Your petitioner has therefore been incarcerated in said jail for nearly four years.

"Your petitioner is fully penitent for all his misdeeds, misconduct, and law violations.

"Joseph W. Prince, the father of your petitioner, has a well-conducted home in the City of Philadelphia in said State, and is engaged in making repairs and alterations to properties and requires assistance in said work, and will give your petitioner employment and also a home in his house if your petitioner is paroled. Your petitioner has had experience in performing such work and will apply himself to that work if paroled.

"Your petitioner further avers that if your honorable court will grant the prayer of your petitioner, he will never at any time violate any of the laws of this Commonwealth, or of any other jurisdiction, and that he will refrain from visiting places where intoxicating liquors are sold legally or illegally, and will refrain from the use of intoxicating liquors, and will submit himself to the advice and direction of his father, the said Joseph W. Prince.

"Your petitioner therefore respectfully prays your honorable court to grant him a hearing for the purpose of consideration by your honorable court of paroling him into the custody of some person to be named by your honorable court, in order that he can take his place in society."

This defendant, as will be observed, was sentenced to our county jail. The sentence of convicts both as respects the term of imprisonment and where they shall be confined is fixed by statute. Does the Parole Act apply to the instant case? By reference to the Criminal Code of March 31, 1860, P. L. 382, we learn that penal clauses affixed to sentences thereunder are of two aspects: First, certain crimes or misdemeanors are punishable by imprisonment or "simple imprisonment", meaning confinement in a county jail or workhouse: Commonwealth, ex rel., v. Francies, 250 Pa. 350, 352; Common-

wealth v. Fetterman, 26 Pa. Superior Ct. 569; second, certain other crimes (including manslaughter) are punishable by imprisonment at labor, by separate or solitary confinement, or by separate or solitary confinement at labor, meaning confinement in a penitentiary except as hereinafter stated: Ibid.; Commonwealth v. Arbach, 113 Pa. Superior Ct. 137. In this last case, the law is very exhaustively examined and cogent reasons advanced for clearing up misunderstandings of the judiciary relative to its powers under the Probation Act of June 19, 1911, P. L. 1055, and the Parole Act of June 19, 1911, P. L. 1059, as amended by the Act of May 11, 1923, P. L. 204.

The Criminal Procedure Act of March 31, 1860, P. L. 427, divides sentences for penitentiary offenses into two classes: (1) Those for a period of a year or longer; (2) those for less than a year. As to the former, it provides in section 74, as amended by the Act of February 28, 1905, P. L. 25, that:

"Whenever any person shall be sentenced to imprisonment at labor, by separate or solitary confinement, for any period not less than one year, the imprisonment and labor shall be had and performed in the State penitentiary for the proper district: Provided, That nothing in this section contained shall prevent such person from being sentenced to imprisonment and labor, by separate or solitary confinement, in the county prisons now or hereafter authorized by law to receive convicts of a like description."

This proviso, as well as the construction placed upon it by this court in Commonwealth v. Fetterman, 26 Pa. Superior Ct. 569, 571, has been misunderstood by some judges. It does not give a court the power to elect to sentence a person, who has been convicted of a crime punishable by imprisonment at labor by separate or solitary confinement, to either the penitentiary or the county jail or prison, except in two instances: (1) Where the act defining the offense and fixing the penalty expressly gives such option (see the Criminal Code, supra, secs.

4, 5, 20, 23, 41, 78, 98, 127, 128) ; or (2) where the county prison to which the convict is sentenced comes within the language of the proviso, and was in 1860, at the passage of the Criminal Procedure Act, supra, or afterwards, "authorized by law to receive convicts of a like description," that is, convicts sentenced to imprisonment at labor, by separate or solitary confinement. Thus by Act of February 8, 1842, P. L. 12, sec. 11, it was provided:

"That every person who shall hereafter be convicted in any court of criminal jurisdiction, in the city or county of Philadelphia of any crime, the punishment of which would now be imprisonment in the State penitentiary, may be sentenced by the proper court to suffer imprisonment by separate or solitary confinement at labor, either in the State penitentiary or in the Philadelphia county prison, at the discretion of the courts, excepting in case of murder in the second degree, and manslaughter."

The Philadelphia County Prison comes within the proviso of section 74 of the Act of 1860, supra, as being "now [that is, in 1860] authorized by law to receive convicts of a like description".

An example of a county prison "hereafter authorized by law to receive convicts of a like description," is the Lancaster County Prison, which by the Act of April 3, 1869, P. L. 692, repealed by Act of June 20, 1883, P. L. 128, was directed to be the place of confinement and punishment of any person convicted in any court of criminal jurisdiction for the County of Lancaster, "of any crime, excepting murder in the second degree, manslaughter or child rape".

By examining Price's Index to Local Laws in Pennsylvania and following it down in the legislation since its publication in 1892, a judge can determine whether the county prison in his county was specially authorized in 1860, or afterwards (up to the Constitution of 1874, art. III, sec. 7), and still remains, authorized by law to receive prisoners convicted of penitentiary offenses,

where the Criminal Code does not give the option of imposing simple imprisonment or imprisonment at labor, etc., and the sentence is for one year or longer. If the case is not within these exceptions, and the county prison is not "authorized by law" to receive such convicts, the court has no power to sentence one convicted of a crime requiring imprisonment at labor by separate or solitary confinement, for a year or longer, to a county jail or workhouse, but must sentence him to the penitentiary for that district.

Another example of a county prison which comes within the proviso of section 74 of the Act of 1860, supra, as being (that is, in 1860) "authorized by law to receive convicts of a like description" is that of our Broadmeadows (Delaware County Prison), recently erected by Delaware County to meet the latest thoughts in penology and for the rehabilitation of criminals or convicts. This court, under the Act of April 11, 1866, P. L. 588, sec. 1, which extended the provisions of the Act of February 1, 1839, P. L. 10, relating to the prison of the County of Chester and the County of Delaware, and the Act of March 22, 1871, P. L. 435, sec. 1, duly sentenced this defendant to our county jail instead of the Eastern Penitentiary, notwithstanding the term imposed exceeding one year with separate and solitary confinement at hard labor, for the latter Act of 1871, supra, provides:

"That every person . . . who shall hereafter be convicted, in any court of criminal jurisdiction in the said county, of any crime, except murder in the second degree or manslaughter, the punishment of which would now be imprisonment in the state penitentiary, may be sentenced by the proper court to suffer punishment, by separate or solitary confinement, at labor, either in the state penitentiary or in the said county prison, at the discretion of the court."

This section supplies the provisions of section 2 of the Act of February 1, 1839, P. L. 10.

At the time of sentence we believed in view of the above that our county prison was specially authorized after 1860 but before the Constitution of 1874, art. III, sec. 7, i. e., in 1871, and still remains, to receive prisoners, as here, convicted of penitentiary offenses, with possibly the exception of those convicted of murder in the second degree or manslaughter. However, the place of confinement is not questioned and anything we might say in that respect would be "obiter dictum". And then the question can only be raised by habeas corpus. However, Delaware County can make a further step by considering itself also within the provisions of the Criminal Code of March 31, 1860, P. L. 382, sec. 78, for the latter fixes the penalty and expressly gives the court the option of imposing "simple imprisonment", which means punishment in the county jail. The section says:

"Every person convicted of any voluntary manslaughter, shall be sentenced to pay a fine not exceeding one thousand dollars, and to undergo an imprisonment, by separate or solitary confinement at labor, or simple imprisonment".

We chose to sentence this defendant to the county jail and we think properly so, for a suitable prison has been erected for furnishing convicts with separate and solitary confinement at labor. If we were sentencing for second degree murder the confinement would be in the penitentiary for there is no provision in the Act of 1860, supra, sec. 78, and Act of April 14, 1893, P. L. 17, sec. 1, for simple imprisonment.

It has been generally thought, and correctly so, that neither the Act of May 10, 1909, P. L. 495, nor that of June 19, 1911, P. L. 1055, applies to sentences to county jails or workhouses; they covered only sentences to penitentiaries, and the latter act put no limit on the minimum sentence.

Hence, some judges, who were not in sympathy with the indeterminate sentence act, in cases where a choice was given by the act of defining the crime and fixing the

penalty, between sentencing the convict to the penitentiary or to the county jail or workhouse, chose the latter, because the indeterminate sentence statute did not apply in such case; and, in crimes where no option was given them, fixed the minimum sentence so close to the maximum as, in effect, to nullify the act. To remedy these evasions of the act, the amending Act of June 29, 1923, P. L. 975 (known as the Ludlow Act), was passed, which changed the existing law in two respects: (1) It applied the indeterminate sentence provision to every sentence which might be punished by imprisonment in a State penitentiary, even though under the penal act the court might, alternatively, have power to sentence the convict to the county jail or workhouse (see, inter alia, sections 4, 5, 20, 23, 41, 78, 98, 127, and 128 of the Criminal Code), and (2) it enacted that the minimum sentence should not exceed one half of the maximum sentence. It also provided:

"That nothing herein contained shall be construed to derogate from the power of the judges of the courts of quarter sessions and of the courts of oyer and terminer, or other court of record having jurisdiction, of the several judicial districts of the Commonwealth, after due inquiry, to release on parole any convict confined in the county jail, house of correction, or workhouse of their respective districts, as provided in section one of an act, approved the nineteenth day of June, one thousand nine hundred and eleven (Pamphlet Laws, one thousand fifty-nine), entitled 'An act extending the powers of judges of courts of quarter sessions and of oyer and terminer, in relation to releasing prisoners in jails and workhouses on parole,' its amendments and supplements. . . . And provided further, That, before any parole shall be granted pursuant to the terms hereof, notice of an intention so to do shall be given, at least ten days prior thereto, by the board of prison inspectors to the judge of the county who imposed the sentence, if he be still in office, but otherwise to the judge or judges of the court of oyer

and terminer or the court of quarter sessions then in session, or if there be no current term, then to the next ensuing term thereof, and having jurisdiction of cases of the like character. Similar notice shall also be given to the district attorney then in office in said county." The act was declared constitutional in Commonwealth v. Sweeney, 281 Pa. 550, and the last two quoted provisos were construed by this court in Commonwealth v. Renya, 91 Pa. Superior Ct. 90.

Some judges have misunderstood the effect of the Act of 1923, supra. It does not give the court power, in all cases punishable by imprisonment in a State penitentiary, to choose or elect whether to sentence the convict to the penitentiary or to the county jail or workhouse, but only applies (1) to cases where the act defining the crime and fixing the penalty specifically gives the court authority to sentence the convict either to the penitentiary or to the county jail or workhouse—that is, gives it the choice to impose imprisonment at labor by separate or solitary confinement, or simple imprisonment; and (2) to cases where although the act defining the crime and fixing the penalty imposes a sentence of imprisonment at labor by separate or solitary confinement—that is, in a State penitentiary—there is in force a special statute authorizing the county prison of that county to receive convicts otherwise punishable by a penitentiary sentence. In both of these instances, and only in these two cases (provided the sentence is for a year or longer), if the court elects to sentence the convict to the county prison or workhouse, instead of to the penitentiary, it must impose an indeterminate sentence, with minimum and maximum periods of confinement, in like manner as if the sentence had been to the penitentiary.

Therefore, in logical sequence, to consider the first section of the Probation Act of 1911, supra, we find that the crimes which are excepted from the probation provisions of the act, to wit, murder (which is not voluntary manslaughter) (Criminal Code, sec. 76, Act of April 14,

1893, P. L. 17), administering poison (ibid, sections 81, 82) ; kidnaping (ibid, section 94, Act of February 25, 1875, P. L. 4), incest (ibid, section 39), sodomy (Act of July 16, 1917, P. L. 1000), buggery (Act of July 16, 1917, P. L. 1000), rape (ibid, section 91, as amended by Act of May 19, 1887, P. L. 128), assault and battery with intent to ravish (ibid, section 93), arson (ibid, section 137; replaced by the Act of April 25, 1929, P. L. 767), robbery (ibid, section 102), and burglary (ibid, section 135), all of them but rape are punishable by imprisonment at labor, by separate or solitary confinement—that is by imprisonment in the penitentiary—and no option is given the court in the Criminal Code, supra, or in the acts defining the crime and fixing the penalty, to impose a sentence of simple imprisonment, or imprisonment in the county jail. By the Criminal Code of 1860, supra, sec. 91, rape was likewise to be punished by imprisonment in the penitentiary, but when the Act of May 19, 1887, P. L. 128, was passed, raising the age of consent, as respects "statutory rape", from 10 to 16 years, the option of imposing simple imprisonment or imprisonment in the penitentiary was given the court, no doubt to cover cases where the girl, though under 16, was well grown, and there was no force or violence used, and it was felt unjust to impose as severe a sentence as in the case of forcible rape. In none of these cases which are excepted from the Probation Act of 1911, supra, but rape, does a court have the power or authority to sentence a convict—for one year or longer—to a county jail or workhouse, except in counties where by special act of assembly county prisons are authorized to receive convicts who otherwise would have to be sentenced to a penitentiary.

When therefore the General Assembly enacted the Probation Act of June 19, 1911, P. L. 1055, and the Parole Act of June 19, 1911, P. L. 1059, no courts, except those in counties where special authority had been given, and still resided, to sentence persons convicted of strictly penitentiary offenses to county prisons, had the power,

legally, to sentence to a county jail or workhouse any person convicted of any of the crimes excepted from the probation provisions of the Act of June 19, 1911, P. L. 1055, other than rape. As to courts generally, that is, all others than those having such special authority, there was no occasion to except from the provisions of the Parole Act of June 19, 1911, P. L. 1055, the crimes excepted from the probationary provisions of the Probation Act of June 19, 1911, P. L. 1059, for persons convicted of those offenses—other than rape—could not legally be sentenced, for a year or longer, to a county jail or workhouse. The law then in force automatically excepted them from the provisions of the Parole Act of June 19, 1911, P. L. 1059, except in counties where the special authority above mentioned had been given.

Whatever our views heretofore that the Probation and Parole Acts were to be read together (and as President Judge Knight said in Commonwealth v. Steiner, 21 D. & C. 80: "This court has decided twice that the Parole Act of June 19, 1911, P. L. 1059, is supplementary to the Probation Act of the same date, P. L. 1055, and as no power in the Probation Act is given the court to suspend the imposition of sentence of one convicted of murder, it is also without power to parole such a convict: Commonwealth v. Thompson, O. & T. of Montgomery County, February term, 1925, no. 34; Commonwealth v. Simmons, 44 Montg. 79.") we have been unable to find any pronouncement of the appellate courts or any decision of the lower tribunals, since Commonwealth v. Simmons, supra, in which a different view is taken, with the exception of Commonwealth v. Fotte, 17 D. & C. 453. In that case, Judge Koch expresses the opinion that the power to parole relates to any convict whose sentence is less than life imprisonment. The judge then goes on to say: "And I think that when a person has an indeterminate sentence imposed upon him, a parole may be considered only upon the expiration of the minimum sentence".

See also Commonwealth v. Arbach, 19 D. & C. 547; Commonwealth v. Jumbo, 19 D. & C. 549.

But since these decisions the Superior Court has spoken in Commonwealth v. Arbach, 113 Pa. Superior Ct. 137, in which we are led to believe is a contrary ruling and by which we are bound in the present proceeding. Judge Keller says:

"We are not convinced that in passing the Probation Act of 1911 (P. L. 1055), relating to the probation of convicts before sentence, and the Parole Act of 1911 (P. L. 1059) relating to the parole of prisoners in jails and workhouses after sentence, the General Assembly had these special counties in mind, or that it was its intention to read the exceptions from probation before sentence into the Parole Act which is concerned solely with paroles, after sentence to county jails, workhouses, and houses of correction (Amendment of May 5, 1921, P. L. 379). The broad language of the act as amended, 'That the courts of quarter sessions and oyer and terminer . . . are authorized, after due hearing, to release on parole *any* convict confined in the county jail, house of correction or workhouse of their respective district' etc.; and the equally broad language of the Act of June 29, 1923, P. L. 975, amending the Probation Act of 1911 (P. L. 1055) which was passed upon by us in Com. v. Renya, supra, 'Provided, That nothing herein contained shall be construed to derogate from the power of the judges of the courts of quarter sessions and of the courts of oyer and terminer . . . to release on parole *any* convict confined in the county jail, house of correction or workhouse in their respective districts, as provided in section one of an act approved the nineteenth day of June, 1911, Pamphlet Laws 1059 . . . its amendments and supplements,' lead us to the opposite conclusion."

He further said, and it applies to Delaware County in particular because of the special act of assembly governing our prison:

"A court of a county having this special and unusual authority to sentence persons convicted of the grosser crimes to the county prison instead of to the penitentiary, may well voluntarily limit the exercise of the parole privilege granted by the Act of 1911 (P. L. 1059) and its amendments, so as to bring it within the spirit of the Probation Act of 1911 (P. L. 1055), except in unusual circumstances calling for special leniency, but we cannot hold that the provisions of Section 1 of the Probation Act of 1911 (P. L. 1055) are impliedly incorporated into the Parole Act of 1911 (P. L. 1059). We cannot read into that act what is not in it, and we are obliged to construe the act without any restrictions other than are contained within it: Com. v. Renya, 91 Pa. Superior Ct. 90."

Upon the merits of this application, now assuming our jurisdiction in the matter is complete, we must limit in this case the exercise of the parole privilege so that it may bring it within the spirit of the Probation Act of June 19, 1911, P. L. 1055, except perhaps in exceptional circumstances calling for "special leniency." This case is not exceptional. There is a real doubt in our mind whether the provisions of the Parole Act were intended to apply to an offense of this high type—the taking of human life. We would be very reluctant so to extend it in the present cause if there is doubt, for this defendant committed an atrocious and cowardly act in shooting this (deceased) human being in whom God had instilled the breath of life only to be suddenly snuffed out and the victim hurled into eternity, because the defendant failed to master himself by self-control.

Besides, we are apprehensive that this parole, if granted, would be considered as a softening of the sentence and a let-down of society's barrier against crime. A parole should be the community's best safeguard and in the exercise of such authority two elements should be considered; first, a test of eligibility for release, that will pass only the fit and hold the unfit; and second, a system

of supervision which will impress the defendant with his continued responsibility for his actions, and incidentally protect the community from a recourse to crime on his part: Commonwealth v. Foster, 22 Del. Co. 17; Commonwealth v. Robinson, 22 Del. Co. 282.

The probation system is meritorious. But where its administration gives freedom instead of prison sentences to gangsters such as this who shot another person to death unjustifiably it is in danger of becoming thoroughly discredited, an instrument safeguarding the criminal at the expense of the public.

Unless the courts use wisely the discretion permitted them by the probation law, unless they disregard loopholes whereby a guilty person may escape punishment, and move to discourage crime through severe sentences; unless police records become governing factors in the employment of the probation law, the probation system becomes an impediment rather than an aid in curbing criminals.

We act on the principle that a person convicted of a crime should be punished, not handled with kid gloves and assured his freedom as expeditiously and with as little inconvenience as possible. It would be well if this were followed in all of our criminal courts.

Our desire is to give every young man who is worthy a chance to rehabilitate himself but it cannot be done in the case at bar because this defendant's conduct was atrocious and grossly violent; and sufficient confinement in prison therefor has not been endured to cleanse him of his sins and to pay his debt to society.

### Order

And, now, September 19, 1934, upon hearing and due consideration by the court in banc of the defendant's petition for parole, the court doth order and decree that (1) the prayer of the petition be denied; (2) the petition for parole be dismissed sec. reg. et sec. leg.